**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Kenneth RIEGER, Defendant and Appellant.**

**Cr. No. 663.**

Supreme Court of North Dakota.

June 18, 1979.

Joseph Dietchman, State's Atty., Minnewaukan, for plaintiff and appellee State of North Dakota.

David Garcia, Devils Lake, for defendant and appellant.

VANDE WALLE, Justice.

After a trial to the court, the defendant, Kenneth Rieger, was convicted of reckless driving in violation of Section 39–08–03, N.D.C.C.[1] He appeals his conviction to this court. We affirm.

---

1. Section 39–08–03, N.D.C.C., provides:

"Any person shall be guilty of reckless driving if he drives a vehicle:

"1. Recklessly in disregard of the rights or safety of others; or

"2. Without due caution and circumspection and at a speed or in a manner so as to

In October 1977, the State's Attorney of Benson County, North Dakota, filed an information in the county court of increased jurisdiction alleging that Rieger "willfully, wrongfully and unlawfully [drove] a motor vehicle from the City of Esmond to 1½ miles west of Esmond, in Benson County, North Dakota, in a reckless manner, all in violation of Section 39–08–03 of the NDCC." Rieger entered a plea of not guilty, and first demanded a jury trial, but later requested a trial to the court.

The county court of increased jurisdiction conducted a trial of the matter. The State called as its only witness a man who had been a deputy sheriff of Benson County at the time of the alleged reckless driving. The deputy testified that, while parked at a service station in Esmond, he heard a loud engine noise and observed a vehicle, containing two persons, that accelerated quickly as it left a stop sign about one block from the service station. The deputy stated that he followed the vehicle, which proceeded westerly from the stop sign on a highway having a maximum speed limit of 55 miles per hour, and described the road on which he traveled pursuing the vehicle. He testified that as he chased the vehicle it was "pulling away" from him, even though he drove his own automobile at speeds as high as 90 to 100 miles per hour. The deputy stated that he continued to follow the vehicle and saw it turn off the road into the yard of a farmstead owned by LeRoy Rieger, the defendant's father, approximately two miles from Esmond. He testified that when he turned into the yard, he saw no one around the vehicle, and, as he approached the vehicle, he noticed that it was emitting smoke from beneath its hood. According to his testimony, he knocked on the door of the farmhouse; when no one answered, he waited in the farmyard for about 15 minutes. At that point, a woman, later identified as Mrs. LeRoy Rieger, the defendant's mother, approached the police

vehicle and, after being asked whether the defendant was home, told the deputy that he had been home all day. The deputy testified that Mrs. Rieger went into the house and returned 15 minutes later to tell him that the defendant "was not around." The deputy stated that he told her to tell the defendant to come to town to talk to him; otherwise, he would go to the State's Attorney to sign two complaints against the defendant. Finally, the deputy said that he returned to Esmond and that, when the defendant found him there 15 minutes later, he gave the defendant a ticket for reckless driving.

On cross-examination, the deputy said that on the date of this event, he had seen Rieger driving the vehicle twice earlier, but admitted that he had not actually seen him in the vehicle at the time of the alleged reckless driving. He also stated that the weather on the date at issue was clear, road conditions were satisfactory, and, as he pursued the vehicle, its driver appeared to have it under control.

At the conclusion of the State's presentation of the case, the defendant's attorney moved for dismissal, arguing that the State had not proved a prima facie case of reckless driving. The court denied the motion.

Presenting his case, the defendant first called LeRoy Rieger, the defendant's father. Mr. Rieger described the road leading to his farm. He testified that, in view of his knowledge of the road, the deputy's description of the pursuit of the speeding vehicle must have been incorrect in certain ways. He said that he did not see his son drive into the yard but did see the deputy do so, and that he did not see the deputy approach the house.

The defendant's next witness was Mrs. Rieger, the defendant's mother. She testified that at the time the deputy arrived in the yard, she was in a nearby Quonset. She stated that she talked with him for a short

endanger or be likely to endanger any person or the property of another.
"Except as otherwise herein provided, any person violating the provisions of this section shall be guilty of a class B misdemeanor. Any per-

son who, by reason of reckless driving as herein defined, causes and inflicts injury upon the person of another, shall be guilty of aggravated reckless driving, and shall be guilty of a class A misdemeanor."

time. She also said that her son's vehicle had malfunctioned on the previous evening and had to be taken back to their farm on a "lowboy." She noted that when she went to the Quonset earlier in the day, the vehicle was resting on the lowboy, but when she returned from the Quonset in the afternoon, it had been moved and was on the ground. Most important, she stated that she did not know whether the defendant had driven the vehicle that afternoon.

After Mrs. Rieger concluded her testimony and both sides had rested, the trial court announced its decision: It found, beyond a reasonable doubt, that Rieger drove his vehicle recklessly in violation of Section 39–08–03(2), N.D.C.C. For this violation, the trial court imposed on Rieger a $500 fine plus $5 in court costs, but suspended $250 of the fine on the condition that Rieger have no moving violations for the next year.

On appeal to this court, Rieger asserts that the evidence against him was insufficient to convict him for a violation of Section 39–08–03, N.D.C.C.

This court considered a similar issue in *State v. Olmstead,* 246 N.W.2d 888 (N.D. 1976). There, a convicted defendant appealed on the ground that the evidence was insufficient as a matter of law to sustain his conviction. Rejecting that argument, this court wrote:

"If we were to judge from the cold print, we might decide many cases differently than trial judges do, and this case might be one of them. But, if we decided differently, we would have no assurance that ours was the better decision. We are reluctant to reverse factual findings of juries or trial judges. Appellate courts have stated in many ways, in both civil and criminal cases, their determination to give respect to the findings of trial judges and juries. Sometimes they say they will not reverse if there is substantial evidence to support the verdict [*Kresel v. Giese,* 231 N.W.2d 780, 791 (N.D. 1975)]; sometimes they say they will not substitute their judgment for that of the trial court or jury [*State v. Champagne,* 198 N.W.2d 218, 226 (N.D.1972)]; some-

times they speak of viewing the evidence in the light most favorable to the judgment [*State v. Neset,* 216 N.W.2d 285, 290 (N.D.1974)]; and sometimes they speak of their great reliance on the findings of the lower court [*In re Estate of Elmer,* 210 N.W.2d 815, 819 (N.D.1973)].

"In criminal cases we have repeatedly held that 'at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction.' *State v. Kaloustian,* 212 N.W.2d 843, 845 (N.D. 1973), and cases cited therein; *State v. Neset,* 216 N.W.2d 285, 287 (N.D.1974).

"However stated, these rules indicate a recognition that the truth can better be determined in the confrontation of the testimony of witnesses appearing in person than from a transcript of the testimony of those witnesses.

"Whichever formulation of the rules is followed, we conclude that the determination of the guilt of the defendant in this case was a question for the trial judge and that there was competent and substantial evidence to support it, and, although we are disturbed by the conflict in the evidence, we cannot say that we are left with a definite and firm conviction that a mistake has been committed. *Scheid v. Scheid,* 239 N.W.2d 833 (N.D. 1976); *Schwartzenberger v. Hunt Trust Estate,* 244 N.W.2d 711 (N.D.1976); *Square Butte Elec. Coop. v. Hilken,* 244 N.W.2d 519 (N.D.1976)." *State v. Olmstead, supra,* 246 N.W.2d at 890.

We cannot state that our examination of the record has left us with a definite and firm conviction that a mistake has been made. The issue of the defendant's guilt or innocence in this case was a question for the trial judge, and substantial, competent evidence, although circumstantial, supports the trial judge's determination. Unrefuted testimony in the record establishes that the vehicle pursued by the deputy was traveling at a speed well in excess of the 55-mile-per-hour speed limit. This speed, the presence

of a passenger in the vehicle with Rieger, and the likelihood that pedestrians and other vehicles would also be using the highway combine to compel a conclusion that the vehicle was operated "Without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or the property of another." Sec. 39–08–03, N.D.C.C.

Rieger, however, asserts that the insufficiency of the evidence lies in the State's failure to present eyewitness testimony establishing that he was driving the vehicle at the time that it was driven recklessly. We rejected a similar argument in *In the Interest of N. N., a Child,* 278 N.W.2d 150 (N.D. 1979):

"In addition, Mr. N. contended in oral argument that the judgment should be set aside because evidence in the record is not supported by eye witness testimony. His argument seems to be that any judgment based upon circumstantial evidence is defective and should be set aside. His argument is not persuasive, inasmuch as circumstantial evidence is acceptable in both civil and criminal cases. *State v. Wilson,* 267 N.W.2d 550, 554 (N.D.1978); *In re J. Z.* [190 N.W.2d 27, 35 (N.D.1971)]; *State v. Carroll,* 123 N.W.2d 659, 667–669 (N.D.1963)."

Rieger has entirely discounted the circumstantial evidence introduced by the State. The deputy testified that twice earlier on the same day he saw Rieger driving his vehicle, that as he pursued the vehicle when the incident occurred, it was driven to the farm of Rieger's father, and that shortly after he informed Mrs. Rieger of his desire to see the defendant, Rieger approached him in Esmond. Moreover, neither Mr. Rieger nor Mrs. Rieger testified that their son did not drive the car that day; they both testified only that they did not see him driving it. Finally, Mrs. Rieger testified that she told the deputy that the vehicle belonged to her son, the defendant.

This evidence, albeit circumstantial, was sufficient to establish that Rieger was driving the vehicle.[2]

The judgment of the trial court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

2. Rieger also asserts that the trial court erred in denying his motion for dismissal made after the State presented its case. Our consideration of this assertion necessarily embraces many of the same legal principles and facts that we have examined with regard to his argument of insufficient evidence to support his conviction. Consequently, we need only state that we have considered his assertion and deem it similarly without merit.