STATE of North Dakota, Plaintiff and Appellee,

v.

Patrick McMORROW, Defendant and Appellant.

Cr. No. 691.

Supreme Court of North Dakota.

Nov. 28, 1979.

Larry E. Stern, Asst. State's Atty., Fargo, for plaintiff and appellee State of North Dakota.

Robert A. Ramlo, of Ramlo, Anderson & Associates, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

After a jury trial in the Cass County Court of Increased Jurisdiction, the defendant, Patrick McMorrow, was convicted of the crime of criminal mischief in violation of Section 12.1–21–05, N.D.C.C.[1] He appeals his conviction and the order denying his motion for a new trial. We reverse and remand.

In September 1978 the State's Attorney of Cass County approved the filing of a complaint in the County Court of Increased Jurisdiction alleging that McMorrow "willfully [damaged] tangible property of another, to-wit: destroying three windows at the Overvold Motor Company, a value of approximately $706.00." [2] McMorrow entered a plea of not guilty and demanded a jury trial. After trial, the jury returned a verdict of guilty.

Prior to August 1978, McMorrow left a vehicle at Overvold Motor Company (hereinafter "Overvold") for servicing and, when he returned for the vehicle, it was missing. Although the record is not clear, it appears that there were several contacts between Overvold and McMorrow relative to the vehicle and that McMorrow believed Overvold should make restitution to him for the loss of the vehicle. On August 16, 1978, McMorrow was at Overvold and spoke with Don Cobler, who at that time was the business manager for Overvold. The discussion between Cobler and McMorrow concerned the missing vehicle and McMorrow's demand for $10,000 which he wanted Cobler to get from Cliff Overvold, one of the owners of Overvold Motor Company. The discussion also involved some showroom windows which had previously been broken at Overvold and some silver balls which McMorrow stated he had found on the ground outside the broken windows. Cobler also testified McMorrow had told him that he, Cobler, should inform his boss that if he did not pay the $10,000 he probably would lose some more windows. Cobler further testified that when McMorrow left Cobler's office McMorrow started counting the windows in the showroom.

On the evening of September 3, 1978, Don Herout, used-car sales manager for Overvold, received a telephone call from a person who identified himself as McMorrow and who told Herout to tell Cliff Overvold that there were more windows broken at Overvold. According to Herout, he had not previously met McMorrow. Herout asked the caller three or four times to identify himself. After receiving the call, Herout telephoned the police to inform them of the call. Two police officers proceeded to Overvold where they found three broken windows and also found two silver ball bearings outside the windows which appeared to fit the holes made in the windows. Herout subsequently filed a complaint charging McMorrow with criminal mischief.

Following the presentation of the State's evidence, McMorrow moved for a judgment of acquittal and argued that, pursuant to

1. Section 12.1–21–05, N.D.C.C., provides:
   Criminal mischief.
   1. A person is guilty of an offense if he:
   a. Willfully tampers with tangible property of another so as to endanger person or property; or
   b. Willfully damages tangible property of another.
   2. The offense is:
   a. A class C felony if the actor intentionally causes pecuniary loss in excess of two thousand dollars or damages tangible property of another by means of an explosive or a destructive device.
   
   b. A class A misdemeanor if the actor recklessly causes pecuniary loss in excess of two thousand dollars or if the actor intentionally causes pecuniary loss of from one hundred through two thousand dollars.
   Otherwise the offense is a class B misdemeanor.

2. McMorrow was also charged with criminal coercion in violation of Section 12.1–17–06, N.D.C.C., but the jury returned a verdict of not guilty, and we are not concerned with that charge on this appeal.

Rule 29 of the North Dakota Rules of Criminal Procedure, the State's evidence was insufficient to sustain the burden of proof required. That motion was denied, and witnesses for the defense were called to testify. McMorrow's mother and sister testified that he had been with them during the entire evening of September 3, 1978, and did not use the telephone during that time. McMorrow also took the stand in his own defense and testified that he had not made the telephone call and had not broken the windows at Overvold. After both sides had rested, McMorrow renewed his motion for judgment of acquittal and the motion again was denied. Following the verdict, McMorrow moved for a new trial pursuant to Rule 33, N.D.R.Crim.P., setting forth six grounds, four of which concern the sufficiency of the evidence. The motion was denied.

McMorrow appeals "from the final judgment of conviction of Criminal Mischief . . . and from the order denying the Motion for New Trial . . ." In written and oral argument to this court, McMorrow's counsel[3] presented two issues for review:

1. Did the trial court err in failing to grant a motion for acquittal due to insufficient evidence?

2. Was there sufficient evidence to submit the case to the jury, and should the trial judge have granted an acquittal or a new trial as a matter of law?

Although the notice of appeal stated that the appeal was from the judgment of conviction and from the denial of the motion for new trial—but did not include the denial of the motion for acquittal—this court has previously held that an appeal from the judgment of conviction authorizes us to review the sufficiency of the evidence. See State v. Neset, 216 N.W.2d 285 (N.D.1974).[4]

McMorrow relies upon Rule 29(a) of the North Dakota Rules of Criminal Procedure[5] in arguing that the trial court erred in refusing to grant a motion for acquittal before the case went to the jury. The State introduced circumstantial evidence as to the motive for the crime. The State introduced no evidence (except for Herout's testimony as to the telephone call) which connected McMorrow with the breaking of the windows at Overvold. A verdict based upon circumstantial evidence carries the same presumption of correctness as other verdicts and will not be disturbed on appeal unless the verdict is unwarranted. See, e. g., State v. Rieger, 281 N.W.2d 252 (N.D.1979); State v. Allen, 237 N.W.2d 154 (N.D.1975). Circumstantial evidence alone may justify a conviction, provided it is of such probative force as to enable the trier of fact to say that the defendant is guilty

---

3. Counsel for McMorrow on appeal was different from counsel who represented him at trial.

4. The record in this case does not indicate that a judgment of conviction was entered as required by Rule 32(b) of the North Dakota Rules of Criminal Procedure. That rule requires that a judgment of conviction set forth the plea, the verdict, and the adjudication and sentence, and requires the judgment to be signed by the judge and entered by the clerk. In this instance the record contains the jury verdict and the sentence, but there is no judgment as such. However, under Rule 37(b) of the North Dakota Rules of Criminal Procedure and Rule 4(b) of the North Dakota Rules of Appellate Procedure, a notice of appeal filed after the announcement of the verdict, decision, sentence, or order but before the entry of the judgment shall be treated as filed after such entry and on the day thereof. We have previously held that we will treat the notice of appeal as filed on the

date judgment is entered, even though it may be a future or fictitious date, because it would serve no useful purpose to remand solely for purposes of entry of judgment before the merits of the case can be decided. State v. Garvey, 283 N.W.2d 153 (N.D.1979).

5. Rule 29(a), N.D.R.Crim.P., provides:

(a) Motion Before Submission to Jury. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information, or complaint after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without having reserved the right.

beyond a reasonable doubt. *State v. Erickson*, 231 N.W.2d 758 (N.D.1975). At the trial court level, circumstantial evidence must be conclusive and must exclude every reasonable hypothesis of innocence, but on the appellate court level the role of the Supreme Court is to merely review the record to determine if there is competent evidence that allows the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. *State v. Allen, supra.*

■ We have carefully reviewed the record, including the transcript of testimony at trial. There is sufficient evidence for the jury to conclude that McMorrow had been involved in a dispute with Overvold involving a vehicle he had left there for servicing which apparently was not returned to him. There is sufficient evidence for the jury to conclude that as a result of that dispute McMorrow believed Overvold owed him money and that he had initiated several contacts with Overvold seeking payment. There is sufficient evidence for the jury to conclude that McMorrow had noticed broken windows at Overvold on August 16, 1978, when he went to that place of business to see Cliff Overvold, one of the owners, but talked to Cobler because Cliff Overvold was not available. There may also be sufficient evidence for the jury to conclude that McMorrow's statements to Cobler at that time constituted some form of threat that if Cliff Overvold did not pay McMorrow some money for the loss of McMorrow's vehicle, McMorrow would break some of Overvold's windows. Thus the evidence may well establish a motive. The circumstantial evidence, however, is not sufficient for us to determine that the jury could draw an inference reasonably tending to prove guilt which would fairly warrant a conviction.

The evidence linking McMorrow with the broken windows at Overvold on September 3, 1978, is based solely on a telephone call to Herout in which the caller informed him there were some windows broken at Overvold. The caller identified himself as McMorrow; but Herout had never met McMorrow prior to that time and thus there is no testimony of voice identification or any other evidence which establishes the identity of the caller.[6] The only evidence is Herout's testimony that the caller identified himself as McMorrow.[7]

Because the standard for review of a jury verdict requires us to merely review the record to determine if there is competent evidence that allows the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction [*State v. Allen, supra*], we are reluctant to overturn that verdict. However, in this instance the evidence connecting McMorrow with the commission of the crime is so tenuous that we conclude it is not sufficient to establish guilt. In *State v. Holy Bull*, 238 N.W.2d 52 (N.D.1975), this court concluded that where the evidence did not in any manner connect the defendant with the crime and permitted mere speculation that the defendant may have been in the general vicinity of the crime, the evidence was totally insufficient to establish guilt beyond a reasonable doubt, not because it was circumstantial evidence but because the evidence did not establish guilt as required by the Constitution and the appropriate rules of law.

Were we to affirm a criminal conviction based solely on evidence consisting of testimony of a witness who states he received a telephone call from a person he had never met but who identified himself as the de-

---

6. Because Herout testified he had not met McMorrow prior to September 3, 1978, he obviously could not testify that as of that time he recognized the voice on the telephone as McMorrow's. There is no evidence to indicate that Herout had heard McMorrow speak subsequent to the date of the telephone call and whether or not McMorrow's voice was the voice he heard on the telephone on September 3, 1978.

7. While McMorrow called as witnesses his mother and his wife, who testified that he made no telephone calls at the time Herout received a call from a person identifying himself as McMorrow, and while McMorrow himself testified he made no calls during that time, we have not considered a conflict in testimony in reaching our decision. See *State v. Olmstead*, 246 N.W.2d 888 (N.D.1976).

fendant, we would be establishing a dangerous precedent. That precedent could very well result in innocent victims' being "framed."[8]

Although McMorrow has argued that the trial court erred in refusing to direct a verdict of acquittal at the end of the State's evidence, as well as at the completion of the evidence presented by the defense and before the matter went to the jury, he has also argued as error the trial court's refusal to grant his motion for a new trial. McMorrow has made no argument that a new trial would place him in double jeopardy. In *Holy Bull*, relying upon *Bryan v. United States*, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950), this court concluded that where an accused successfully obtained a review of conviction by having assigned several errors on appeal, including the denial of a motion for acquittal, the appellate court was not required to direct a judgment of acquittal but could direct a new trial. The court stated: "Where the accused moves for and obtains a new trial he in reality waives any right to set up former jeopardy to prevent a complete new trial on the original charge." *State v. Holy Bull*, supra, 238 N.W.2d at 57.

Subsequent to the decision in *Holy Bull*, the United States Supreme Court in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), granted certiorari to resolve the question of whether or not an accused may be subjected to a second trial where the conviction in a prior trial was reversed by an appellate court solely for lack of sufficient evidence to sustain the jury's verdict. In *Burks*, before the case was submitted to the jury, the court denied a motion for a judgment of acquittal. The jury found Burks guilty as charged and he thereafter filed a motion for a new trial, maintaining that, among other things, the evidence was insufficient to support the verdict. The motion was denied by the District Court and Burks appealed to the Sixth Circuit Court of Appeals (547 F.2d 968), which agreed with Burks's claim that the evidence was insufficient to support the verdict and reversed his conviction. Rather than terminating the proceeding against Burks, the Circuit Court remanded the case to the District Court for a determination of whether or not a directed verdict of acquittal should be entered or a new trial ordered. The Supreme Court noted that the Circuit Court assumed it had the power to order this remedy by virtue of the fact Burks had explicitly requested a new trial and that the Circuit Court had cited as its authority *Bryan v. United States, supra*. The Supreme Court further noted that after *Bryan* and subsequent decisions a defendant who requested a new trial as one avenue of relief could be required to stand trial again, even when his conviction was reversed due to failure of proof at the first trial. Chief Justice Burger, writing the unanimous opinion of the eight Justices participating in the case, reversed *Bryan* and subsequent cases relying upon it, stating:

"In our view it makes no difference that a defendant has sought a new trial as one of his remedies, or even as the sole remedy. It cannot be meaningfully said that a person 'waives' his right to a judgment of acquittal by moving for a new trial. . . . Moreover, as *Forman [Forman v. United States]*, supra [361 U.S. [416] at 425, 80 S.Ct. [481] at 486, 4 L.Ed.2d [412] at 419 (1960)], has indicated, an appellate court is authorized by § 2106 to 'go beyond the [particular] relief sought' in order to provide that relief which would be 'just under the circumstances.' Since we hold today that the Double Jeopardy Clause precludes a second trial once the reviewing court has

---

8. "Of late years the word 'framed' when used to describe evidence has come to be generally accepted as implying that wilful perjurers, suborned thereto by, and acting in conspiracy with, parties in interest to litigation are swearing or have sworn to matters which have no basis in fact. Webster's New International Dictionary, 1935." *Tri-State Transit Co. of*

*Louisiana v. Westbrook*, 207 Ark. 270, 277, 180 S.W.2d 121, 125 (1944).

Webster's Third New International Dictionary 902 (1971) defines the term "frame" to mean "to devise falsely (as a criminal charge against an innocent man) . . . to contrive the evidence against (an innocent man) so that a verdict of guilty is assured . . ."

found the evidence legally insufficient, the only 'just' remedy available for that court is the direction of a judgment of acquittal. To the extent that our prior decisions suggest that by moving for a new trial, a defendant waives his right to a judgment of acquittal on the basis of evidentiary insufficiency, those cases are overruled." 437 U.S. at 17, 18, 98 S.Ct. at 2150, 57 L.Ed.2d at 13, 14.

Subsequent to the decision in *Burks*, the United States Supreme Court granted certiorari to decide whether or not a State may retry a defendant after his conviction has been reversed by an appellate court on the ground that the evidence introduced at the prior trial was insufficient, as a matter of law, to sustain the jury's verdict. The Court concluded that the constitutional prohibition against double jeopardy announced in *Burks* was applicable to proceedings in State courts. *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).[9]

■ In view of our conclusion that there was insufficient evidence to support McMorrow's conviction and in view of the decisions of the United States Supreme Court in *Burks, supra*, and *Greene, supra*, we reverse the decision of the trial court denying McMorrow's motions for a judgment of acquittal and remand the case to the trial court with the direction that it enter a judgment of acquittal.

ERICKSTAD, C. J., and PAULSON and SAND, JJ., concur.

PEDERSON, Justice, dissenting.

A threat may not always supply the connecting link between an act and the person who made the threat but, if it ever could be the link, it would have to apply to McMorrow in this case. McMorrow told Cobler that he found some ball bearings on the ground outside Overvold Motor Company, where some windows had previously been broken. He also told Cobler that if he was not paid $10,000, Overvold would probably lose more windows. Several windows were subsequently broken and two ball bearings, which appear to fit the holes made in the windows, were found outside. McMorrow doesn't appear to deny that he intended his remarks to be a threat.

. Most crimes that are committed are not forecasted in detail by the persons who intend to commit them. It has happened in arson cases, and 6A C.J.S. Arson § 43, states the general rule to be that evidence of threats is admissible to prove motive and malice, "and to connect the accused with the crime."

The threat to destroy showroom windows with ball bearings is of such a peculiar nature as to be a natural connection between the person making that threat to the evidence that the showroom windows were thereafter destroyed by ball bearings. The peculiar nature of this threat, and the subsequent consequences, i. e., that windows were broken and ball bearings were found nearby, are factors which, when added to the other circumstantial evidence given, lead me to believe that there was competent evidence to warrant the jury returning a conviction.

*State v. Holy Bull*, 238 N.W.2d 52 (N.D. 1975), upon which the majority places great reliance, does not indicate that if there had been evidence that Holy Bull had threat-

---

9. In *Veitch v. Super. Ct. of Cty. of Santa Clara*, 89 Cal.App.3d 722, 725, 152 Cal.Rptr. 822 (1979), the California Court of Appeals, First District, discussed *Burks* and *Greene* and concluded that under California law the granting of a new trial by the *trial court* has the same effect as a mistrial; that the granting of a motion for judgment of acquittal bars another prosecution for the same offense, but the trial court's granting of a motion for new trial does not. The California court observed that while the Double Jeopardy Clause precludes retrial if reversal by a *reviewing court* is grounded upon the fact that the evidence presented to the jury was so insufficient that the defendant was entitled to a judgment of acquittal, retrial is not precluded when a *trial court* grants a motion for a new trial based upon insufficiency of the evidence. The California court agreed with the respondent court's contention that to equate a motion for new trial because of insufficiency of the evidence at the *trial court* level with a motion for acquittal at the *trial court* level would render impotent a valuable judicial tool enacted for the protection of the accused. See Rule 33, N.D.R.Crim.P.

ened to stab Robert L. French to death, the connection would not have been made between Holy Bull and the stabbing.

Whether or not Herout could testify that the voice he heard on the telephone was like McMorrow's voice would not, in my opinion, be any more significant in this case than the threat, in connecting McMorrow with the crime. Both are items of circumstantial evidence which can supply the connecting link.

The risk, of course, is greater of a "frame" when one makes threats. However, courts do not owe a threatener absolute protection from the consequences of the threat. The conviction should be affirmed.