The STATE of North Dakota,
Plaintiff and Appellee,

v.

James S. SADLER, Defendant
and Appellant.

Cr. No. 759.

Supreme Court of North Dakota.

May 28, 1981.

John M. Olson, State's Atty. and Rolf Sletten, Asst. State's Atty., Bismarck, for plaintiff and appellee; argued by Rolf Sletten, Asst. State's Atty., Bismarck.

Benjamin C. Pulkrabek, Mandan, for defendant and appellant.

PEDERSON, Justice.

James S. Sadler was convicted of gross sexual imposition as defined in § 12.1–20–03(1)(d), NDCC. He appeals and we affirm.

On the evening of May 24, 1980, three twelve-year-old youths—two brothers, Bucky and Tim, and another boy, Wayne—were taken to a movie theater in the Kirkwood Plaza shopping center in Bismarck by Wayne's mother. After seeing a movie they played pinball machines at a nearby amusement shop. Their plan was to go eventually to the brothers' home to spend the night.

While at the amusement shop the boys met Sadler who asked them if they wanted a job moving band equipment at the nearby Kirkwood Motor Inn. The boys wished to

make some money and called their parents for permission. Wayne's mother came to Kirkwood Plaza and told them they could work until 11 p. m., at which time they would be picked up by the parents of Bucky and Tim. The three boys then got into Sadler's car and were driven to the Kirkwood Motor Inn. After some delay at the motel and more driving around, Sadler told Bucky and Tim that he would drop them off back at the Kirkwood Plaza to wait for another man. He told Wayne to accompany him to his house to get an amplifier. Bucky and Tim got out of the car at Kirkwood Plaza, and Sadler and Wayne drove away.

According to Wayne's testimony, Sadler drove out to an area south of Bismarck near Mary College called the "Desert." He stopped the car and got out. He told Wayne to get out and come over to where he was. When Wayne did as he was ordered, Sadler pulled a knife and put it to Wayne's neck. He put a rope around Wayne's neck and told him to take his clothes off. He made Wayne lay down on his stomach, laid on top of him and put his penis into Wayne's rectum. Wayne testified expressly that Sadler penetrated and was inside his rectum. When Sadler was done he drove Wayne to Bucky and Tim's house.

Meanwhile, at Kirkwood Plaza, Bucky and Tim waited about an hour for the man they were to meet but no one appeared. They went to Kirkwood Motor Inn to look for Wayne but failed to find him. At 11 p. m. Bucky and Tim's parents came to the motel to pick up the boys. When the parents learned of Wayne's disappearance they called his mother and the police. Everyone eventually went to Bucky and Tim's home where they discovered Wayne. Wayne told of the incident and was then taken to Bismarck Hospital.

A physician at the hospital examined Wayne's groin and rectal areas. He found a rash around the anus which he concluded was caused by some form of abrasion. There was also a small skin tag which had been the site of some bleeding. He discov-ered two tree buds embedded in the surface of Wayne's skin. Finally he examined the sphincter muscle at the opening of the rectum and determined that its tone was "high" indicating a "bit of spasm." The doctor, when asked, stated that all of these symptoms were indicative of forceable rectal entry, although he was unable to say without doubt that penetration of the anus had occurred.

A police investigation led to the discovery of two pieces of rope at the place where Wayne said the attack occurred. The police also received from Sadler a knife which he admitted owning. Sadler, however, denied having any sexual contact with Wayne. He testified that he took Wayne to the Desert, that Wayne may have run into someone there who assaulted him, but that Wayne's accusation was otherwise false. Police witnesses presented by the State testified that Sadler had told them things about his activities on May 24 which conflicted with his testimony given at trial. These witnesses stated that Sadler told them that he had taken the boys to a bowling alley in Mandan and then home. According to these witnesses, Sadler claimed also to have gone out to Apple Creek Country Club to pick up some stereo equipment. At trial Sadler denied having told the police any of these things.

The jury returned a verdict finding Sadler guilty of gross sexual imposition, § 12.1–20–03(1)(d), NDCC, which reads:

"A person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if:

. . . . .

d. The victim is less than fifteen years old; . . ."

"Sexual act" is defined in § 12.1–20–02(1), NDCC:

" 'Sexual act' means sexual contact between human beings who are not husband and wife consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, or the mouth and the vulva; or the use of

an object which comes in contact with the victim's anus, vulva, or penis. For the purposes of this subsection, sexual contact between the penis and the vulva, or between the penis and the anus or an object and the anus, vulva, or penis of the victim, occurs upon penetration, however slight. Emission is not required."

"Sexual contact" is defined in § 12.1–20–02(2), NDCC:

"'Sexual contact' means any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire."

Sadler raises several issues on appeal. First he challenges the sufficiency of the evidence introduced to show penetration of the anus, an essential element of gross sexual imposition. Sadler points out that the examining physician declined to testify that the anus was penetrated. While Wayne stated that Sadler did penetrate his *rectum*, Sadler's claim, as we understand it, is that penetration of the *anus* was not expressly proven.

 In an appeal testing the sufficiency of evidence to support a conviction by a jury, the defendant must show that the evidence, when viewed in the light most favorable to the verdict, contains no reasonable implication of guilt. *State v. Chyle*, 297 N.W.2d 409, 412 (N.D.1980). Sadler's argument falls short of this standard. The doctor testified:

"Anus is the anatomical name given to that portion of the rectum which is the lower one-half to one inch of the rectum—the anal canal. And then, beyond that one inch is the rectum itself, the rectum proper."

Obviously, because the anus is the outer part of the rectum, any penetration of the rectum implies penetration of the anus. Moreover, the doctor, although unable to speak unequivocably as to penetration, did indicate that Wayne's condition was consistent with that type of trauma. We cannot say that the jury's verdict was unreasonable in this respect.

Sadler claims the court erred in refusing to give a requested instruction relating to aggravated assault as a lesser included offense. The court did give an instruction for sexual assault, § 12.1–20–07, NDCC, as a lesser included offense.

 Before the court can give an instruction for a lesser included offense, every element of the lesser offense must be contained in the offense charged. *State v. Piper*, 261 N.W.2d 650, 654 (N.D.1978). Aggravated assault is defined in § 12.1–17–02, NDCC:

"A person is guilty of a class C felony if he:

"1. Willfully causes serious bodily injury to another human being;

"2. Knowingly causes bodily injury to another human being with a dangerous weapon or other weapon, the possession of which under the circumstances indicates an intent or readiness to inflict serious bodily injury;

"3. Causes bodily injury to another human being while attempting to inflict serious bodily injury on any human being; or

"4. Fires a firearm or hurls a destructive device at another human being."

"Serious bodily injury" is:

"... bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ."

See also, § 12.1–01–04(6), NDCC.

 It is immediately evident that gross sexual imposition as charged and proven in this case does not include any of the above stated elements. See, § 12.1–01–04(15)(a), NDCC. There was no evidence of serious bodily injury to Wayne, nor of any injury done through the agency of a weapon, nor of injury to Wayne resulting from an attempt by Sadler to do serious bodily harm, nor of use of a firearm or other destructive device. Gross sexual imposition as defined in § 12.1–20–03(1)(d) is simply sexual contact, as defined, with a person less than

fifteen years old. None of the elements of § 12.1–17–02 are or need be present. We therefore reject Sadler's claim of error on this ground.

 Sadler's final argument is that the trial court erred by refusing to grant his motion for judgment notwithstanding the verdict (treated as a motion for judgment of acquittal, Rule 29(c), NDRCrimP) or, alternatively, for a new trial. Sadler again claims insufficiency of evidence showing penetration of the anus. This argument is largely foreclosed by our treatment of Sadler's first issue, *supra*. The motion was addressed to the trial court's discretion and denial of the motion will be reversed only if that discretion has been abused. *State v. Yodsnukis*, 281 N.W.2d 255 (N.D.1979). Finding no abuse of discretion, we affirm the trial court's ruling on the motion.

The conviction is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.