STATE of North Dakota, Plaintiff
and Appellee,

v.

David LAWENSTEIN, Defendant
and Appellant.

Cr. No. 962.

Supreme Court of North Dakota.

March 29, 1984.

David Garcia, of Garcia & Garcia, Devils Lake, for defendant and appellant.

Lewis C. Jorgenson, State's Atty., Devils Lake, for plaintiff and appellee.

GIERKE, Justice.

This is an appeal by the defendant, David Lawenstein, from a judgment entered on a jury verdict in the District Court of Ramsey County. Lawenstein was convicted of four counts of theft of property. We affirm.

Lawenstein was president and general manager of D & L Marketing, Inc. [D & L]. The corporation operated a business in Devils Lake known as "Gas Stop", which included a bulk fuel sales operation. In his capacity as an officer of the corporation, he entered into a "Farm Plan" agreement with the First National Bank of Devils Lake [Bank]. The "Farm Plan" is a program whereby a merchant could bring his sales drafts to the Bank; the Bank would then credit the merchant's bank account, bill the merchant's customers, and collect customer payments. If a customer refused to pay, for whatever reason, the Bank reserved the absolute right to "charge back" the merchant's account.

The "Farm Plan" was initiated at the Bank in August of 1982. Lawenstein was one of the first merchants to sign up for the program. Between September 23 and November 26, 1982, numerous false sales drafts were submitted to the Bank by D & L. The drafts were for fuel which had neither been ordered by nor delivered to the customer. The Bank credited D & L's checking account for the amount of these

drafts. When D & L's customers protested the bills they had received, the Bank charged back to D & L's account the amount represented by the disputed bills. These charge-backs resulted in overdrafts on D & L's account in excess of $17,000, which the Bank was subsequently required by banking regulations to charge off with a deposit to the account from Bank funds.

The sole issue presented for review is whether or not the evidence was sufficient to sustain a conviction of theft of property, pursuant to § 12.1–23–02 of the North Dakota Century Code. Lawenstein does not challenge the sufficiency of the evidence to support a finding that crimes were, in fact, committed. He argues, rather, that there was insufficient evidence to prove that he committed those crimes.

■ The evidence upon which the jury returned the guilty verdicts was largely circumstantial. A verdict based upon circumstantial evidence, however, carries the same presumption of correctness as other verdicts and this court will not disturb such verdict on appeal unless it is unwarranted. *State v. Olson,* 290 N.W.2d 664, 670 (N.D. 1980); *State v. McMorrow,* 286 N.W.2d 284, 286 (N.D.1979). A conviction may be justified on circumstantial evidence alone if it is of such probative force as to enable the trier of fact to say that the defendant is guilty beyond a reasonable doubt. *State v. Olson, supra; State v. McMorrow, supra.* At the trial court level, circumstantial evidence must be conclusive and must exclude every reasonable hypothesis of innocence; but on the appellate court level, the role of the Supreme Court is to merely review the record to determine if there is competent evidence that allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. *State v. Olson, supra* 290 N.W.2d at 671; *State v. McMorrow, supra* 286 N.W.2d at 287. On an appeal challenging the sufficiency of the evidence, the defendant must show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt. *State v. Sadler,* 305 N.W.2d 913, 915 (N.D.1981). *See also*

*State v. Chyle,* 297 N.W.2d 409 (N.D.1980); *State v. Olmstead,* 246 N.W.2d 888 (N.D. 1976).

■ Upon reviewing the record in this case we cannot say that a jury could not reasonably have concluded that Lawenstein was guilty of theft of property. It is clear that only four persons connected with D & L, including Lawenstein, were in a position to have filled out the false sales drafts. Two of those persons were employees who could not possibly have profited by the fraud since the false slips were deposited only to D & L's account. The other person was Lawenstein's wife, Roberta. Evidence also indicated that Lawenstein was in complete charge of the business operations. All of the customers who were falsely charged for fuel which had neither been ordered nor delivered testified that they had dealt exclusively with Lawenstein. All discussions with the Bank concerning the disputed bills were held by Lawenstein. Standing alone, this evidence is clearly insufficient to sustain a guilty verdict. Other testimony, however, indicated that, when confronted by the Bank and by his customers with the disputed bills, Lawenstein responded with evasions, inconsistent statements, and, it could be concluded, outright falsehoods. In each case, Lawenstein asserted to the Bank that fuel had indeed been delivered to the customers and that the sales drafts were valid. At the same time, however, Lawenstein informed several of his customers that the bills that they were receiving from the Bank were a mistake. There is also direct evidence that one of the false sales drafts was filled out by an officer of the Bank and deposited to D & L's account at Lawenstein's express direction.

Section 12.1–03–03(1), N.D.C.C., provides that:

"*12.1–03–03. Individual accountability for conduct on behalf of organizations.*—1. A person is legally accountable for any conduct he performs or causes to be performed in the name of an organization or in its behalf to the same

extent as if the conduct were performed in his own name or his behalf."

Having reviewed the evidence presented to the jury in the light most favorable to the verdict, we conclude that the evidence contains a reasonable inference of Lawenstein's guilt.

For the reasons stated in this opinion, the judgment is affirmed.

ERICKSTAD, C.J., and PEDERSON, SAND and VANDE WALLE, JJ., concur.