STATE of North Dakota, Plaintiff
and Appellee,

v.

Harlan JACOBSON, Defendant
and Appellant.

Cr. No. 870105.

Supreme Court of North Dakota.

Feb. 25, 1988.

Howe & Seaworth, Grand Forks, for defendant and appellant; argued by Henry H. Howe.

Lewis C. Jorgenson, States Atty., Devils Lake, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

Defendant Harlan Jacobson appeals from a judgment of conviction entered against him on April 3, 1987. A twelve-member jury found Jacobson guilty of theft of property as a Class C felony under sections 12.1–23–02(2)[1] and 12.1–23–05(2)(a), N.D. C.C.[2] The district court sentenced Jacobson to one year of imprisonment at the state penitentiary. On appeal Jacobson

1. Section 12.1–23–02(2), N.D.C.C., reads in part: "12.1–23–02. *Theft of property.* A person is guilty of theft if he:

     \*     \*     \*     \*     \*     \*

2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat...."

2. Section 12.1–23–05(2)(a), N.D.C.C., reads: "12.1–23–05. *Grading of theft offenses.*

     \*     \*     \*     \*     \*     \*

2. Theft under this chapter is a class C felony if:

contends: (1) the evidence produced at trial was insufficient to support the jury's verdict of guilty; and (2) the district court abused its discretion when it rejected a plea agreement offered on the day of trial and sentenced Jacobson to one year of imprisonment at the state penitentiary. We disagree with Jacobson's contentions and accordingly affirm the judgment of conviction.

The facts, viewed in the light most favorable to the jury verdict, are as follows. The theft of property charge stems from an agreement in which Jacobson offered to sell a steel building to Lowell Thorson. Thorson responded to Jacobson's newspaper advertisement featuring "ARCH STEEL BUILDINGS." After some discussion, Thorson agreed in writing to purchase a "WedgCor" building with a fourteen foot door from Jacobson. Thorson gave Jacobson a check for $2,200 as a down payment for the building and agreed to pay an additional $5,152.08 when the building was delivered. The total price of the building Jacobson agreed to sell was $7,352.08, which included $800 for the fourteen foot door, $200 for freight and $275.08 for tax. At trial, the State alleged Jacobson could not profit by selling the building at that price. The State called an employee of "WedgCor" who testified that WedgCor does not sell buildings directly to consumers; rather, WedgCor sells to its dealers who in turn sell to consumers. Jacobson was not an authorized WedgCor dealer but was able to purchase WedgCor buildings from an authorized WedgCor dealer. The WedgCor employee testified that a dealer would pay "approximate[ly]" $8,000 for the building Jacobson offered to sell for $6,877.

The purchase agreement was entered into on May 12, 1986, and shipment of the building was expected "a few days either way" of June 10, 1986. Jacobson cashed the $2,200 check on May 14, 1986, keeping $600 in cash and depositing the remaining $1,600 in his business checking account. About a week after the agreement was entered into, Jacobson contacted Thorson and explained that the WedgCor building was not available with a fourteen foot door. Thorson then orally agreed to buy an "ArchTech" building with a fourteen foot door for the same price as the WedgCor building. Thorson asked Jacobson to send a "foundation guide" because Thorson wanted to prepare the foundation before June 10, 1986.

When Thorson did not receive the building nor the foundation guide on June 10 he called Jacobson on June 14, 1986, and asked for an explanation. Jacobson then said he could not deliver the building until June 25. Thorson then told Jacobson that he, Thorson, would contact Jacobson the following Monday and decide whether he still wanted to purchase the building. Thorson subsequently contacted Jacobson, demanded his $2,200 down payment, and indicated that he no longer wanted to purchase the building.

Jacobson refused to return the money and told Thorson it was too late to demand a refund. Jacobson also informed Thorson that he had turned the down payment over to his attorney. Thorson then sent a certified letter to Jacobson demanding his $2,200 down payment. Jacobson apparently signed the return receipt of the certified letter. Thorson subsequently filed suit in small claims court for the down payment. Jacobson was charged with theft of property on July 15, 1986, and at the end of August, Jacobson's attorney returned Thorson's down payment.

During trial the State contended Jacobson intended to keep Thorson's down payment from the time he received it without delivering the building. Jacobson refutes the State's contention, arguing that the transaction turned into a contractual dispute after Thorson demanded his money back and that he, Jacobson, did not have the requisite criminal intent to be convicted of theft of property.

The State and Jacobson apparently entered into a plea agreement several months

a. The property or services stolen exceed     five hundred dollars in value...."

prior to trial. Jacobson, however, withdrew his guilty plea at a later time. On the day of Jacobson's trial, counsel for the State and Jacobson attempted to form another plea agreement. After some discussion, the court rejected the second plea agreement and instructed the attorneys to prepare to select a jury. After Jacobson was found guilty by a jury of twelve, and after the jury was dismissed, the court sentenced Jacobson to one year of imprisonment in the state penitentiary.

■ On appeal challenging the sufficiency of the evidence, Jacobson must show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt. *State v. Lawenstein*, 346 N.W.2d 292, 293 (N.D. 1984); *State v. Sadler*, 305 N.W.2d 913, 915 (N.D.1981). We have repeatedly distinguished our review of circumstantial evidence from review of circumstantial evidence at the trial court level. *See, e.g., State v. Carroll*, 123 N.W.2d 659 (N.D. 1963). At the trial court level, circumstantial evidence must be conclusive and must exclude every reasonable hypothesis of innocence; but on the appellate court level, the role of this Court is to merely review the record to determine if there is competent evidence that allowed the jury to draw an inference "reasonably tending to prove guilt and fairly warranting a conviction." *State v. Matuska*, 379 N.W.2d 273, 275 (N.D.1985); *State v. Lawenstein, supra; State v. Olson*, 290 N.W.2d 664, 670 (N.D. 1980); *State v. McMorrow*, 286 N.W.2d 284, 286 (N.D.1979). Moreover, we do not substitute our judgment for that of the jury. *State v. Tininenko*, 371 N.W.2d 762, 765 (N.D.1985); *State v. Walden*, 336 N.W. 2d 629, 634 (N.D.1983).

■ Turning to the facts of Jacobson's conviction, we conclude there was enough competent evidence, albeit circumstantial, that would permit the jury to conclude Jacobson intended to deprive Thorson of the $2,200 down payment without delivering a steel building. We believe intent to deprive

may be inferred from the evidence introduced at trial.

Jacobson cashed the $2,200 check a few days after receiving it. He converted $600 to cash and deposited the balance in his checking account. Jacobson failed to deliver the building on the agreed upon date and failed to contact Thorson after the delivery date passed. When Thorson contacted Jacobson, Jacobson indicated that he could not deliver the building until June 25, 1986. Thorson demanded his money be returned to him a week after delivery of the building was due but Jacobson refused to return the money. Jacobson received a written demand from Thorson and again refused to return the money. After the contract was entered into, Thorson contacted Jacobson several times on Jacobson's telephone answering machine, but did not get a response back from Jacobson. Moreover, testimony from an employee of WedgCor suggested Jacobson was selling the building to Thorson at a price which was lower than WedgCor's price at which it sells the building to its dealers. Viewed together and in the light most favorable to the jury's verdict, we cannot conclude that these facts reveal no reasonable inference of guilt.

Jacobson also contends the trial court abused its discretion when it rejected the plea agreement and when it sentenced Jacobson to one year of imprisonment in the state penitentiary. Jacobson refers to the following discussion which occurred on the day of the trial just before jury selection:

"THE COURT: We are again in chambers prior to commencing the jury trial in the Harlan Jacobson case. Counsel, you have something you want to offer to the Court.

"MR. JORGENSON: Well, I don't know, Mr. Spaeth and I had a discussion.

"MR. SPAETH: We did have discussion in Mr. Jorgenson's office and I proposed that there be a plea for the Class A Misdemeanor of misapplication of property which I believe this case more closely resembles than theft. Mr. Jor-

genson essentially reoffered the original plea agreement that was withdrawn when Mr. Jacobson withdrew his original guilty plea at the earlier hearing which I was not present at and with the addition of the cost of the jury and I told Mr. Jorgenson that I would speak to my client about that. My client would like to do that this morning, would like to again change his plea to guilty based on the negotiations that I've had with Mr. Jorgenson and accept those terms of one-year probationary term, I believe, was what Mr. Jorgenson was going to ask for and for no fine or jail time and the *only question I would have in regard would be with Mr. Jacobson in the hearing aid business. If he's in Grand Forks that should a probationary term be applied or the plea agreement be accepted for what are reporting provisions, we would ask that you take that into consideration.* [Emphasis added to disclose confusion.]

"THE COURT: Mr. State's Attorney.

"MR. JORGENSON: State's position is, of course, like in any case, we never know what a jury will do and I would want costs, whatever these costs are and I'd stick to the original plea agreement at that time.

"We realize there's a jury sitting out there and we've gone to quite a bit of expense in this flip-floping [sic] back and forth and we both recognize and Mr. Spaeth recognizes that no jury in trial is 100 percent one way or the other.

"THE COURT: The sentence called for under the Class A Misdemeanor was one year probation?

"MR. JORGENSON: Supervised probation.

"THE COURT: Supervised probation and payment of costs.

"MR. JORGENSON: Payment of costs.

"THE COURT: Do you have any idea what kind of costs you're agreeing to, Mr. Spaeth.

"MR. SPAETH: I assume, Your Honor, that we're looking at something in the area of a thousand dollars with 30, 40 jurors at $25 a day. It's a large chunk of change.

"THE COURT: Possibly closer to $1500, isn't that correct?

"MR. JORGENSON: They usually run from 12 hundred up towards—in some counties—as high as 17 depending upon the mileage and such. Additionally, of course, the State would want some assurance that those costs would be paid. I don't know what kind of arrangements would be made, but I certainly don't want our not collecting.

"THE COURT: Okay, is there anything further that you want to put on the record? All right, the Court does reject the plea agreement. We will proceed to trial on the case, the felony charge and at this time, counsel do either one of you want the voir dire taken by the court reporter?

"MR. JORGENSON: State doesn't.

"MR. SPAETH: No, Your Honor.

"THE COURT: All right, if you're ready for trial, we will go and select our jury." [3]

■ Placed in the context of the events before trial, and the very confusing and

**3.** Jacobson objects to this discussion on two other grounds. He asserts the trial court improperly participated in plea agreement discussions in violation of Rule 11(d)(1), N.D.R. Crim.P., which states that the "[trial] court shall not participate in any such discussion." It is apparent from reading the discussion that the trial court was merely trying to ascertain the terms of the proposed plea agreement.

Jacobson also apparently asserts Rule 23.1, N.D.R.Crim.P., prohibits the consideration of jury costs as a term of a plea agreement. We will not attempt to determine whether or not a plea agreement which included such costs would be enforceable, as the court rejected the plea agreement and the State is not attempting to enforce it. It is incongruous for Jacobson to argue that because the plea agreement may have been defective it was improper for the trial court not to accept the plea agreement. In our view the determination of the validity of such a provision in a plea agreement is irrelevant to the determination of the issues in this case.

vague nature of the proposed plea agreement, it is clear the trial court did not abuse its discretion in rejecting the plea agreement. The last two sentences of the major part of the proposed plea bargain stated by Mr. Spaeth are almost incomprehensible. As the discussion indicates, Jacobson entered a guilty plea to a class A misdemeanor and later withdrew his plea. On February 13, 1987, the court ordered the closing date for the offering of a plea agreement to March 27, 1987. Jacobson apparently attempted to renegotiate a second plea agreement on April 2, 1987, the morning of his trial. Rule 11(d)(5), N.D.R. Crim.P.[4] clearly gives the trial court the authority to set a deadline by which a plea agreement must be presented to the court. Jacobson did not comply with the court's explicit order to present a plea agreement on or before March 27, 1987, nor did he show "good cause" for not meeting the deadline under Rule 11(d)(5), N.D.R.Crim.P. Jacobson cannot now be heard to complain that the trial court abused its discretion in refusing to accept his second plea agreement on the day of his trial.[5]

Jacobson's final contention is that the one-year sentence was an abuse of discretion. Jacobson's theft of property is a class C felony with a maximum imprisonment of five years, or a fine of $5,000, or both. *See* section 12.1–32–01(4). Trial courts have broad discretion in determining the length of sentences imposed. *State v. Smith*, 238 N.W.2d 662, 671 (N.D.1976). We have said that sentences within the minimum and maximum statutory limits are within the discretion of the trial court and will not be set aside unless the sentence exceeds the statutory limit or the trial court substantially relies on an imper-

missible sentencing factor in determining the severity of the sentence. *State v. Hass*, 268 N.W.2d 456, 464 (N.D.1978) *quoting State v. Rudolph*, 260 N.W.2d 13, 16 (N.D.1977); *State v. Smith, supra* at 673.

Jacobson does not allege the trial court relied on impermissible sentence factors. We therefore conclude the trial court did not abuse its discretion when it sentenced Jacobson to one year of confinement.

For the reasons stated herein, the judgment of conviction is affirmed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

4. Rule 11(d)(5), N.D.R.Crim.P., reads:
   "(5) *Time of Plea Agreement Procedure.* Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, *prior to trial, as may be fixed by the court.*" [Emphasis added.]

5. Jacobson asserts that the trial court did not give a reason for rejecting the plea agreement and that the interests of both parties are better

served when the trial court provides an explanation for its rulings. We agree that would be a good practice, *State v. Nace*, 371 N.W.2d 129, 130 n. 1 (N.D.1985), but in light of the previous indecision on the part of Jacobson in this case, we do not believe that failure on the part of the trial court to state a reason for rejecting the plea agreement was reversible error.