STATE OF NORTH DAKOTA, EX REL. A. B. HERMANN, for the Use and Benefit of A. B. Hermann and All Others Similarly Situated, Appellant, v. FARMERS ELEVATOR COMPANY, a Corporation, of Rolette, North Dakota, Indemnity Insurance Company of America, a Foreign Corporation, John Ekholm, Chris Hanson, W. S. Armentroit, Peter P. Nelson, Respondents.

(231 N. W. 725.)

Opinion filed June 28, 1930.  Rehearing denied July 30, 1930.

*F. B. Lambert,* for appellant.

*J. J. Kehoe,* for respondents.

NUESSLE, J. This action is brought to recover on account of the conversion of certain grain belonging to the plaintiff Hermann.

The defendant elevator company was engaged in the grain warehouse business at Rolette, North Dakota. The remaining defendants are the sureties on its bonds. Plaintiff is the owner of certain grain warehouse receipts issued by the elevator company pursuant to the provisions of § 3113, Comp. Laws 1913. These receipts evidence wheat and rye aggregating 879 bushels delivered to the elevator company in the years 1920, 1921 and 1922. In the fall of 1924 the company met with some financial difficulties. On the 20th of October of that year it ceased to buy grain and closed its elevator. Thereafter its board of directors met and took some steps to adjust its troubles. The state supervisor of grades, weights and measures was called in and took the company's books for the purpose of auditing them and ascertaining the condition of its affairs. The directors designated one Tweeten as trustee but it does not definitely appear what the character of his trust was or what his powers and duties were thereunder. However, he weighed out, shipped, and sold grain, paid off storage tickets and, in part at least, looked after its business. An account was opened in his name in a local bank, collections were deposited therein as made and thereafter payments of claims against the elevator company were made by checks drawn on this account signed by Tweeten as trustee. One Curtin had been the manager and in charge of the elevator business. He continued to look after the affairs of the concern. He, together with Tweeten, made collections, shipped out and sold grain, audited and allowed claims, and drew checks in payment thereof. These checks were drawn against the trustee account and Tweeten signed them. There was some grain in the elevator at the time business was suspended on October 20th, but all this was shipped out during the remaining days of October or the first ten days of November, excepting about 1300 bushels of oats and some 3200 pounds of a mixture of wheat and other grain, apparently sweepings. Eight or nine car loads of grain were shipped to the terminal markets and sold during this period. Curtin testifies that arrangements were made with another local elevator whereby the defendant company might procure such grain as should be needed to satisfy outstanding storage tickets in case a demand for the grain represented by them was made upon the company. Also, that when the

stored grain was sold, hedges were bought to protect it. The elevator company had various accounts outstanding. These were collected in as fast as possible and the ticket holders were paid off as tickets were presented when funds were available, which was not always the case. On the 8th of January, 1925, one Mortenson the agent of the plaintiff went to the elevator to see Curtin regarding the plaintiff's storage tickets. Tweeten, and Smith, a representative of the state supervisor of grades, weights and measures, were with Curtin in the elevator. Mortenson had a letter and telegrams from the plaintiff directing him to sell the grain and get the money for it if it was possible to do so. There is a dispute in the record as to what took place when Mortenson went to perform this errand. He says he advised Curtin that he wanted to sell the plaintiff's grain and demanded the price therefor. Curtin says that he demanded a price three cents above the market on the day of the demand and that he also demanded a reduction amounting to three-sevenths of the regular storage charge. So Curtin refused to pay, saying he would not pay that price if he had a barrel of money. It is agreed that there was no demand for the grain in so many words. Thereafter at various times there were some negotiations between the plaintiff or his agent and Curtin or Tweeten with respect to the matter but they arrived at no adjustment of the matter. The elevator remained closed from October 20, 1924, until the latter part of July, 1925, when it resumed business. During this period there was no grain in the elevator excepting the oats and sweepings above referred to. In the meantime all of the storage tickets excepting the plaintiff's had been paid off. When the elevator reopened it bought and stored grain as theretofore and at all times thereafter had on hand a sufficient quantity of wheat and rye to satisfy the plaintiff's storage tickets.

In September, 1926, the plaintiff began this action seeking to recover the value of the grain as of date January 8, 1925, with interest from that date. In his complaint he set up that he was the owner of the storage tickets in question; that on the 24th of October, 1924, and thereafter, the defendant elevator company was insolvent; that on the 8th of January, 1925, he demanded the possession of the grain represented by the tickets or the payment of the market value thereof; that the company refused to honor that demand. The defendants, answering, admitted the storage of the grain and the issuance of the tickets;

denied the insolvency of the elevator company, the demand, and the conversion, and the value of the grain as alleged by the plaintiff; and further alleged that the elevator company had at all times been able, willing and ready to satisfy the tickets either by delivery of the grain or the payment of the market value thereof, less proper charges. The case came to trial before a jury. The defendants had a verdict. The plaintiff having laid the proper foundation therefor moved for judgment notwithstanding the verdict or for a new trial. The motion was denied and the plaintiff appeals from the order made accordingly and from the judgment entered pursuant to the verdict.

The plaintiff on this appeal predicates error on account of the denial of his motion for judgment notwithstanding the verdict or for a new trial, on account of rulings on questions of evidence during the trial, and on account of instructions as given and the refusal of the court to give instructions as requested.

The plaintiff now contends, as he did in the trial court, that the defendant elevator company was in fact insolvent; that from the time when it closed on October 20, 1924, and thereafter until it reopened in July, 1925, it was not at any time in a position to pay off its storage tickets or to comply with the terms thereof by delivering the grain represented by them; that the plaintiff through Mortenson made a demand for the grain on January 8, 1925; that this demand was refused; that even though no demand was made for the grain at that time, yet since the defendant elevator company was unable either to deliver or to pay that a conversion of the grain took place as of that date and that the plaintiff is entitled to recover the value thereof as of that date, less proper charges. On the other hand, the defendants contend that the elevator company was under no obligation to buy the stored grain; that all it had contracted to do when it took the grain and issued the storage receipts was to deliver grain of the same kind, quality and quantity on demand, either at that place or at some terminal market; that no demand for the grain was made; that though the plaintiff demanded the price of the grain on January 8th, yet that demand was for an amount in excess of the value of the grain at that time and there was no demand for the market price thereof and no refusal to pay the same; that the defendant had made arrangements with another local elevator whereby it was in position to satisfy the tickets; that the

defendant was ready, willing and able to satisfy them by delivery if demand for the grain had been made and to pay for the grain if a proper demand for the price had been made; that there was no conversion on January 8th; that if there was a conversion at all it was on October 20th at the time the elevator closed and the grain was shipped out; and that it has always been ready, willing and able to pay for the grain as of that date.

When the plaintiff stored his grain the title thereto remained in him. The elevator company was a bailee but had the right to ship out and sell the grain thus stored, provided it substituted therefor other grain of like kind and quality. If it shipped out so much of the grain in its possession that not enough remained to satisfy the plaintiff's tickets, then to the extent of the resulting deficiency there was a conversion. But if subsequently and before a demand for the grain was made the elevator company procured other grain of the same kind and quality sufficient to satisfy the plaintiff's tickets, then such grain became the plaintiff's grain and he was entitled to the same on demand. If such later acquired grain was also shipped and sold so that again not enough remained to satisfy the plaintiff's tickets, then there was another conversion. See Kastner v. Andrews, 49 N. D. 1059, 194 N. W. 824; Carson State Bank v. Grant Grain Co. 50 N. D. 558, 197 N. W. 146; Huether v. McCaull-Dinsmore Co. 52 N. D. 721, 204 N. W. 614. In the instant case when the defendant elevator company shipped out the grain which it had in storage so that none remained to satisfy the plaintiff's tickets, it was guilty of a conversion as of that time. But if the company later bought grain of the same kind and quality, in the meantime there having been no demand for the grain, the default was cured and plaintiff could not thereafter claim a conversion as of the October date. Under the terms of the storage contract the plaintiff was not required to sell nor was the defendant elevator company required to buy. The plaintiff might leave the grain in storage indefinitely so long as he paid the proper charges, and then demand it either at the place where stored or at any terminal point, as he saw fit; but he could not demand it at both places. Of course the elevator company could not have it at both places at the same time. It follows then that a demand on his part was necessary in the absence of proof that the elevator company could not comply with the demand in one place or the

other, and a demand for the price of the grain was not sufficient to establish a conversion as of the date when made.

The plaintiff insists that the record establishes a demand on his part for the grain as of date January 8, 1925, but that, in any event, such demand was not necessary for the reason that the defendant elevator company was at no time after the closing of the elevator in October in a position to comply therewith, and therefore a demand would have been unavailing.

There is a conflict in the evidence as to what was said and done on January 8 when Mortenson went to the elevator. The defendants' version of the transaction is that there was no demand for the grain and that all that Mortenson did was to ask for the price of the grain represented by the plaintiff's tickets as for a sale and that such price so demanded was considerably in excess of the market on that day. Clearly, the record is sufficient to sustain the defendants' version of the matter.

A demand for personal property and a refusal to comply with it merely evidence the fact of conversion. If a conversion is otherwise shown demand and refusal are not essential. If, in the instant case, the defendant company for any reason, whether on account of insolvency or otherwise, could not at any time after the closing of the elevator in 1924 have complied with a demand for the grain, then none was necessary. See Stutsman v. Cook, 53 N. D. 162, 204 N. W. 976. But the mere fact that the defendant ·elevator company could not have met all of its obligations at any time after October, did not of itself render a demand unnecessary. If it could and would have satisfied the plaintiff's storage tickets, though unable to discharge all of its other obligations, then a demand was not excused.

Where personal property is converted the owner's remedy is in an action to recover either the value of the property as of the date of conversion, together with interest from such date, or the highest market value of the property between the date of the conversion and the date of the verdict without interest if the action is seasonably begun. See § 7168, Comp. Laws 1913. In the instant case, the plaintiff sues to recover the value of the grain as of the date of conversion with interest from such date, and in his complaint he alleges that such conversion took place on January 8, 1925. Defendants offered evidence to the

effect that when the grain was shipped out the defendant elevator company hedged and also arranged with a local elevator to procure sufficient grain of like kind and quality to satisfy the tickets. If this is so the defendant elevator company would have been able to comply with plaintiff's demand if such had been made, whether it was for such grain at any terminal point or at the place of storage. But defendants' evidence with respect to this matter is vague and indefinite. So much so that we do not believe that it is sufficient to sustain a finding based upon it. Nevertheless, the plaintiff is not on this account entitled to judgment notwithstanding the verdict, whether a demand was or was not made by Mortenson for the grain. The failure of the defendants' proofs in this respect defeats the plaintiff's claim to a recovery based upon the value on January 8, 1925, and no other value is proven. If, in fact, the elevator company shipped out. and sold grain in October or November and thereafter was never in a position to deliver it pursuant to the plaintiff's tickets, then the conversion took place at the time the grain was so shipped and sold, and an action in conversion for its value as of that time would lie whether a demand was or was not made for it. The record clearly establishes that the elevator was closed on October 20th; that the grain on hand was shipped out and sold; that thereafter the defendant elevator was unable either to deliver the stored grain or to pay for it; that a trustee was appointed to look after its affairs; that the state authorities were called in; and that such adjustments as were made were made pursuant to the state's approval. But it does not appear when the grain was shipped and sold or what its value was either at the time of the closing of the elevator or when it was shipped and sold. In any view of the case then, plaintiff is not entitled to a judgment notwithstanding the verdict.

The record also clearly establishes that the plaintiff was the owner and holder of the storage tickets as alleged in his complaint; that he was unable either to procure the grain represented by the tickets or to sell it and obtain the purchase price. Plaintiff was not permitted to show the market value of the grain at any other date than that of January 8, 1925. Nor was he permitted to examine fully as to the course which was followed by the defendant elevator company in regard to the matter of settling for the outstanding storage tickets. We think he was unduly restricted in his proofs with respect to these matters and

that he was thereby prejudiced. The fact that the plaintiff may have selected the wrong date as for the conversion should not bar him from a recovery. The elevator company cannot complain. It shipped and sold the plaintiff's grain and received the proceeds thereof. It has had the use of the money since. It may be if the plaintiff is afforded an opportunity to do so he will be able to establish both the date of the conversion and the value of the grain as of that date. In any event, he should be afforded an opportunity to do this. Therefore, the judgment heretofore entered will be reversed and the case remanded for a new trial, plaintiff to have leave to amend if he desires to do so.

BURKE, Ch. J., and BURR, BIRDZELL and CHRISTIANSON, JJ., concur.