**DAKOTA BANK AND TRUST COMPANY OF FARGO,**
Plaintiff and Appellee,

v.

**Ronald and Jean BRAKKE, husband and wife, Defendants,**

and

**Fenske Feed and Grain Co., Defendant and Appellant.**

Civ. No. 11210.

Supreme Court of North Dakota.

April 16, 1987.

Lamb, McNair, Larson & Carlson, Fargo, for plaintiff and appellee; Bruce H. Carlson (argued).

Glenn Fenske, Hankinson, for defendant and appellant.

GIERKE, Justice.

Fenske Feed and Grain Company (Fenske) appeals from the decision of the district court granting a directed verdict to Dakota Bank and Trust Company (Dakota) in the amount of $39,565.85. We reverse the directed verdict as to the issue of damages and remand the matter for a determi-

nation of the extent of Dakota's interest in the grain converted by Fenske.

The controversy in this case centers around a commodity of corn harvested by Ronald Brakke (Brakke) and delivered to Fenske's elevator in Hankinson, North Dakota. This commodity of corn (over 60,000 bushels) was used by Brakke as collateral for a farm production loan given by Dakota during the year 1983. The secured corn was stored by Brakke in three metal grain bins located on his property in Rustad, Minnesota. An elevator and annex are also located at Brakke's grain storage site in Rustad.

Pursuant to an agreement with Dakota, Brakke was permitted to take the secured corn from his storage bins in Rustad, Minnesota, to the Fenske elevator in Hankinson, North Dakota, where Fenske was to sell the corn for the highest market value that could be obtained. Upon delivery of the corn to the elevator in Hankinson and in accordance with § 41–09–28(4), N.D.C.C., Fenske had Brakke execute a Certificate of Ownership disclosing that both Dakota Bank and Farmers Home Administration (FmHA) possessed a security interest in the corn.

Before delivery of the corn to Hankinson, Dakota inspected the three storage bins at Rustad sometime in the spring of 1984. Although the grain was in bad shape, all three bins were full of corn at the time of the spring inspection. Later that summer, however, during a follow-up inspection, Dakota discovered that the three storage bins containing the corn in which the bank possessed a security interest were nearly empty. Except for two or three thousand bushels, the secured corn was gone. According to Fenske's records, during the spring and summer of 1984, Brakke had delivered over 60,000 bushels of corn to the Fenske elevator in Hankinson.

Section 41–09–28(4), N.D.C.C., required Fenske to include the names of all secured parties disclosed on the Certificate of Ownership as payees on any check or draft issued for the corn.[1] Fenske marketed the corn and issued three (3) checks for corn sold on behalf of Brakke. The first check (number 7175), in the amount of $53,424.44, met the requirements of § 41–09–28(4), N.D.C.C., and was made payable to Ron Brakke, Farmers Home Administration (FmHA), *and* Dakota Bank. However, the second and third checks issued by Fenske failed to name Dakota as a payee. The second check (number 7376), in the amount of $5,163.75, was made payable to Ron Brakke only. The third check issued by Fenske (number 7405) was in the amount of $23,300 and was made payable to FmHA and Ron Brakke. The total value of these three checks ($81,891.19) represented over 32,360 bushels of the 60,000 bushels of corn Brakke had hauled to Hankinson, leaving 28,006 bushels of corn in the Fenske elevator unsold. A check for $10,800 was deposited with the district court representing the value of the balance of Brakke's corn that remained in the possession of Fenske but was not sold.[2]

After never receiving payment from Fenske or Brakke for the sale of Brakke's corn, Dakota brought a claim for conversion against Fenske. In its complaint, Dakota asserted that *all* 60,000 bushels of corn that Brakke hauled from his storage bins in Rustad, Minnesota, to the Fenske elevator in Hankinson, North Dakota, was corn in which Dakota maintained its security interest. Dakota asserted that Fenske had converted this corn contrary to Dakota's interest therein. Dakota further argued that, since Fenske had failed to name Dakota as a payee on the second and third checks (numbers 7376 and 7405) then, pursuant to § 41–09–28(4), N.D.C.C., Fenske was "absolutely liable" to Dakota for the

1. The procedures required by § 41–09–28(4), N.D.C.C., were replaced in 1985 when the statute was repealed by the North Dakota State Legislature and replaced with a central filing system. Although repealed in 1985, § 41–09–28(4), N.D.C.C., was in effect at the time the problem between Fenske, Brakke, and Dakota

occurred and is the applicable statutory provision we must construe in the instant case.

2. Because of the extremely poor quality of the remaining 28,000 bushels of corn in the Fenske elevator, the parties stipulated to place its value at $10,800.00.

face value of the checks issued by Fenske for payment on the grain hauled by Brakke to the elevator in Hankinson.

In its answer, Fenske admitted that "it was aware" of Dakota's security interest in Brakke's corn, but countered that it was liable only to the extent that Dakota possessed an actual secured interest in the commodity of corn that Brakke hauled to Hankinson.[3] It is clear from the pleadings that while Dakota asserted a security interest in *all* of the corn Brakke delivered to the Fenske elevator in Hankinson, Fenske claimed that *only a portion* of the corn delivered by Brakke was corn which constituted collateral in which Dakota possessed a secured interest.

Throughout the jury trial, Fenske attempted to introduce evidence through offers of proof and the testimony of several witnesses that the corn hauled to Hankinson by Brakke was not entirely composed of corn in which Dakota claimed its security interest. The scenario proffered by Fenske details that, because of its bad quality, the secured corn had been blended with higher grade corn in which Dakota did not possess a security interest in order to increase its marketability. Fenske argued that of the 60,000 bushels of corn that Brakke delivered to the Fenske elevator in Hankinson, only a portion thereof was taken from the three storage bins containing Dakota's collateral. Through offers of proof, Fenske asserted that the secured corn was taken from the three storage bins located at Rustad and then moved into the elevator and annex (also located at Rustad), where it was mixed (blended) with other corn in which Dakota had no security interest. Fenske alleges that Brakke blended the corn in which Dakota possessed a security interest with corn in which Dakota had no interest at his elevator in Rustad *before* the corn was hauled to the Fenske elevator in Hankinson. Additionally, Fenske attempted to establish that much of Dakota's secured corn was still located in the elevator at Brakke's storage site near Rustad.

The court excluded all of Fenske's evidence regarding the mixing of the corn from the jury as being outside of the pleadings and entered a directed verdict for Dakota for $39,565.85 (the value of checks numbered 7376 and 7405, plus the check deposited with the court representing the value of the unsold corn remaining in the Fenske elevator, as well as Dakota's costs and disbursements). Fenske appears before us asserting a number of issues on appeal, specifically: (1) whether the district court abused its discretion by denying Fenske's motion to amend its answer during the trial; (2) whether the trial court erred by excluding evidence relating to the commingling of corn; and (3) whether it was proper for the district court to grant a directed verdict in favor of Dakota.

Fenske concedes liability in conversion for the value of the corn it sold in which Dakota actually possessed a security interest. However, Fenske asserts that not all of the 60,000 bushels of corn delivered to Hankinson by Brakke was composed of

---

**3.** It is clear from a review of the answer filed by Fenske that the elevator denied that it interfered in any manner with Dakota's security interest in the corn or that Dakota suffered any loss due to Fenske's actions. The answer, in relevant part, states:

"IV.
"This defendant admits that it was aware that plaintiff claimed a security interest in the grain which constitutes the underlying basis for this action. This defendant further states that plaintiff was also aware that another party also claimed a security interest in said grain.

"V.
"This answering defendant denies Paragraph XIII or plaintiff's Amended Complaint as to the estimated value of said grain.

\* \* \* \* \* \*

"VII.
"This defendant specifically denies any allegation that Plaintiff's interest has been jeopardized in any way or manner. Defendant furthermore alleges that plaintiff has suffered no loss as a result of defendant's business conduct. Defendant also alleges that it is in either current possession or (sic) said grain or has sold any of said grain underlying this action and protected plaintiff's interest in the consummation of that sale...."

Additionally, Fenske specifically denied that Dakota was entitled to damages for the market value of *all* the grain delivered to the Fenske elevator by Brakke.

collateral in which Dakota had a security interest. Therefore, Fenske argues *it should be liable only for that percentage of Dakota's interest in the corn actually converted.* As we previously observed, none of Fenske's evidence pertaining to the blending or commingling of Dakota's secured corn with other unsecured corn was permitted to go to the jury. The district court ruled that this evidence was outside of the scope of the issues framed in the pleadings. Accordingly, the dispositive issue we are faced with concerns whether the district court properly excluded Fenske's evidence relating to the commingling of Dakota's secured corn with other corn not secured by Dakota.

The district court's ruling, excluding the evidence of the blending or commingling of the corn as being outside of the pleadings, is apparently based upon the court's misinterpretation of § 41–09–28(4), N.D.C.C. Section 41–09–28(4), N.D.C.C., was North Dakota's unique contribution to Section 9–307 of the Uniform Commercial Code (U.C.C.).[4] Section 41–09–28(4) stated:

"*41–09–28 (9–307) Protection of buyers of goods.*

\* \* \* \* \* \*

"4. Before a merchant who purchases or a commission merchant who sells farm products for another for a fee or commission issues a check or draft to the seller in payment for farm products, the merchant must require the seller to execute a certificate of ownership, on the form as prescribed by the commissioner of agriculture, disclosing the names, social security numbers, addresses and home counties of the owners for five years prior thereto, the county of location of the property prior to the sale, and the names of the parties to whom security interests have been given against the farm products

or representing that security interests do not exist. The merchant is required to enter on the check or draft the name of the secured party disclosed in the certificate, or actually known by the merchant at the time, as payee with the seller. The certificate must include a warning to the seller that an untrue statement as to any portion of the certificate constitutes a class C felony if the value of the property exceeds five hundred dollars, or a class A misdemeanor if the property does not exceed five hundred dollars in value."

Dakota claims, pursuant to § 41–09–28(4), N.D.C.C., that once a commission merchant (Fenske, in this instance) issued a check in payment for farm products to a seller (Brakke) the elevator was also required to include as a payee on that check every secured party disclosed on the Certificate of Ownership. Therefore, Dakota argues, since Dakota was named as a secured party on the Certificate of Ownership but *not* included as a payee on checks number 7376 and number 7405 issued by Fenske, then in accordance with § 41–09–28(4), N.D.C.C., Fenske is *strictly liable* for the face value of the checks. Dakota supports this interpretation with an in-depth analysis of the legislative history of § 41–09–28(4), N.D. C.C.

Dakota asserts that a review of the legislative history clearly reveals that the intent of the Legislature in enacting § 41–09–28(4), N.D.C.C., was to protect a secured party's interest in farm products sold by a grain merchant by placing the burden of ascertaining any secured interest jointly upon the farmer and grain elevator. The bank also argues that any failure by a grain merchant to protect a secured party's interest by naming that secured party on checks issued for the sale of farm products resulted in holding the elevator strictly liable for the face value of those checks is-

---

**4.** Section 41–09–28, N.D.C.C. (U.C.C. 9–307), exemplified the manner in which farm products are treated differently from other "goods" under the provisions of the U.C.C. North Dakota's modifications of U.C.C. § 9–307 were embodied in § 41–09–28, N.D.C.C., and have been referred to as "... perhaps the strangest version of section 9–307" of the states that have modified this

provision. Meyer, *The 9–307(1) Farm Products Puzzle: Its Parts and Its Future,* 60 N.D.L.Rev. 401, 432 (1984). For an interesting discussion of the farm product problem, *see, Farm Products Puzzle, supra,* at 434–39; *also generally* Meyer, *Crops as Collateral for an Article 9 Security Interest and Related Problems,* 15 U.C.C.L.J. 3 (1982–83).

sued, despite the extent of the secured party's interest in the commodity involved. Dakota contends that Fenske's position in the instant case raises the very problem that § 41–09–28(4), N.D.C.C., was attempting to prevent, i.e., throwing a grain merchant in the middle of any dispute between two lenders or a lender and a farmer.

Fenske concedes liability under § 41–09–28(4), N.D.C.C., but argues that Dakota's recovery should be limited to the extent of the bank's actual secured interest in the corn that Fenske sold on behalf of Brakke. In other words, Fenske asserts that nowhere in § 41–09–28(4), N.D.C.C., does it require an elevator to *automatically* be held strictly liable for the face amount of every check issued in payment for a commodity that does not contain the name of a secured party as payee. Fenske contends that the district court should have looked into Fenske's assertion that the secured corn had been commingled and considered other applicable provisions in Chapter 41 and North Dakota law in its determination of damages and any possible defenses Fenske could proffer to Dakota's conversion claim. Fenske argues that, as to the issue of damages, other legal principles and statutes outside of § 41–09–28(4), N.D.C.C., govern Dakota's right to recovery.

Dakota's claim is for the conversion of corn in which it possessed a security interest. Under the applicable legal standards presented in Chapter 41 (North Dakota's codification of the Uniform Commercial Code) and other provisions of North Dakota law, Fenske asserts that it is not strictly liable for the face value of checks issued in payment of the corn but liable only to the extent of Dakota's actual secured interest in the corn sold by Fenske. Simply because the elevator may not have followed the directives presented in § 41–09–28(4), N.D.C.C. (thereby placing itself in the middle of a dispute between a secured party and a farmer), Fenske should not be precluded from attempting to reduce its liability for damages by producing evidence that the extent of Dakota's interest in the com-

modity sold by Fenske was not a one-hundred percent interest. To hold otherwise would remunerate Dakota, at Fenske's expense, for more than the bank is entitled to under its conversion claim. Therefore, Fenske argues, since Dakota's actual interest in the corn was in dispute, a question as to damages exists and the district court abused its discretion by excluding Fenske's evidence as to the extent of Dakota's recovery and, correspondingly, the damages Fenske must pay. We agree.

▮▮ While we accept Dakota's interpretation of § 41–09–28(4), N.D.C.C., it is clear that the Legislature did not anticipate, nor does the statute require, absolute recovery in a situation such as this, where it is claimed that a secured party did not possess a security interest in the entire commodity sold by a grain merchant. The Uniform Commercial Code (U.C.C.) was not intended as a comprehensive codification of commercial law. *Pioneer State Bank v. Johnsrud,* 284 N.W.2d 292, 297 (N.D.1979). We have recognized that other statutory principles and non-code law should be utilized to supplement the provisions of the U.C.C. where the non-U.C.C. law has not been displaced by a particular provision therein. *See,* Section 41–01–03, N.D.C.C. (U.C.C. § 1–103); *also, Great American Insurance Companies v. American State Bank of Dickinson,* 385 N.W.2d 460, 462 (N.D.1986).

▮▮ Aside from the penal provisions embodied in the statute, a review of § 41–09–28(4), N.D.C.C., reveals no particular directive for recovery once a grain merchant fails to name a secured party as a payee on checks issued in payment for farm products. While Dakota argues by analogy that § 41–03–56, N.D.C.C. (U.C.C. § 3–419), requires absolute liability on the part of the elevator, we are not convinced that this provision applies in the instant case, especially since Dakota's claim was for the conversion of corn.[5] Because § 41–09–28(4), N.D.C.C., did not establish provisions for

---

**5.** Section 41–03–56, N.D.C.C. (U.C.C. § 3–419), is in Article 3 of the Uniform Commercial Code dealing with commercial paper. While § 41–03–56, N.D.C.C., is relevant in situations involving commercial paper, its applicability to the instant set of circumstances is questionable.

the recovery of secured parties' property, other statutes and case law govern Dakota's recovery in this instance. As we stated in *Great American Insurance Companies:* "We do not believe that the common law of conversion has been displaced by the particular provisions of the U.C.C." *Great American Insurance Companies* at 462; *see also, Willow City Farmers Elevator v. Vogel, Vogel, Brantner & Kelly*, 268 N.W.2d 762, 767 (N.D.1978).

■ Dakota's claim against Fenske was for the conversion of corn in which Dakota possessed a security interest. Conversion is the wrongful exercise of dominion over the property of another inconsistent with, or in defiance of, the owner's right. *Dairy Department v. Harvey Cheese*, 278 N.W.2d 137, 144 (N.D.1979). It is axiomatic in the law of torts that in a claim for conversion, the complainant's amount of recovery is limited to the value of its interest in the property on the date of conversion. *See,* W. Prosser, *The Law of Torts*, § 15 Conversion 80 (4th ed. 1971). In North Dakota, damages in a claim for conversion of grain by a public warehouse are governed by §§ 32–25–01 [6] and 32–03–23,[7] N.D.C.C. Under these statutory provisions, when the grain of different owners is stored in an elevator, becomes commingled in a common mass and any part thereof is converted, "... the owner of any part of such common mass may maintain an action against the wrongdoer for the recovery of the possession or *the value ... of the quantity of such person's contribution to such common mass"* at the time of conversion, plus interest from that time. Section 32–25–01, N.D.C.C. (Emphasis added.) *See also,* § 32–03–23, N.D.C.C.; *Mevorah v. Goodman*, 60 N.W.2d 581, 587 (N.D.1953); *State v. Farmers' Elevator Company*, 59 N.D. 679, 231 N.W. 725, 728 (1930); and *Pickert v. Rugg*, 1 N.D. 230, 234–35, 46 N.W. 446, 447 (1890).

In this respect, Fenske argues that § 41–09–36(2), N.D.C.C. (U.C.C. § 9–315), controls in this situation and supports his contention that Dakota is entitled only to that ratio of the total mass of corn to which its interest originally attached.[8] Indeed,

6. Section 32–25–01, N.D.C.C., reveals:
   *"32–25–01. Who may bring action—Effect.* —In any case where the grain of different owners has been stored in a warehouse or elevator and has become mingled in a common mass, and any part thereof has been converted or is detained wrongfully by any person, the owner of any part of such common mass may maintain an action against the wrongdoer for the recovery of the possession or the value, as the case may be, of the quantity of such person's contribution to such common mass. It shall not be necessary to join as a party any other person who likewise may have contributed, or be alleged to have contributed, to such common mass, but the commencement of such action shall be deemed to be a selection or segregation of such person's interest, in all things the same as though, upon a demand made therefor, such grain or the value thereof had been set aside and delivered to such party."

7. The language governing an award of damages for the conversion of personal property provides:
   *"32–03–23. Damages for conversion of personalty.*—The detriment caused by the wrongful conversion of personal property is presumed to be:
   1. The value of the property at the time of the conversion, with the interest from that time; or

   2. When the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and
   3. A fair compensation for the time and money properly expended in pursuit of the property."

8. Section 41–09–36, N.D.C.C. (U.C.C. § 9–315), states:
   *"41–09–36. (9–315) Priority when goods are commingled or processed.*
   "1. If a security interest in goods was perfected and subsequently the goods or a part thereof have become part of a product or mass, the security interest continues in the product or mass if:
   a. The goods are so manufactured, processed, assembled, or commingled that their identity is lost in the product or mass; or
   b. A financing statement covering the original goods also covers the product into which the goods have been manufactured, processed, or assembled.
   In a case to which subdivision b applies, no separate security interest in that part of the original goods which has been manufactured, processed, or assembled into the product may be claimed under section 41–09–35.
   "2. When under subsection 1 more than one security interest attaches to the product or

§ 41-09-36(2), N.D.C.C., does substantiate Fenske's assertion that a secured party should be entitled to no more than the actual extent of its secured interest in a commodity which has become part of a greater mass.

Fenske concedes that Dakota is entitled to the value of its security interest in the corn. However, Fenske contends that Dakota should not recover the total value of the 60,000 bushels of corn Brakke hauled to Hankinson if, in reality, the bank's actual interest in that commodity is a smaller measure of the whole. We have no problem accepting Dakota's interpretation of § 41-09-28(4), N.D.C.C., protecting a secured party's interest by mandating liability on the part of an elevator in the instance where an elevator issued a check payable solely to a farmer despite knowledge by the elevator of a secured party's interest in the corn delivered to its business. Our reading of § 41-09-28(4), N.D.C.C., recognizes the purpose behind the statute of protecting a secured party's interest in farm products. However, there is no language in § 41-09-28(4), N.D.C.C., requiring absolute liability on the part of the elevator to the exclusion of evidence mitigating that elevator's liability for damages.

The trial court is given broad discretion in determining the relevancy of proffered evidence. *See,* Rule 401, N.D.R.Ev.; *also, Shark v. Thompson,* 373 N.W.2d 859, 865 (N.D.1985). Evidence is relevant if it would tend to prove or disprove any matter of fact in issue. *Shark* at 865.

Our review of the district court's decision to exclude evidence proffered by Fenske, relating to the commingling of secured with unsecured corn, is governed by an abuse of discretion standard. In other words, we will not disturb the trial court's ruling unless there is an affirmative showing of a manifest abuse of discretion. *Shark, supra; see also, R & D Amusement v. Christianson,* 392 N.W.2d 385, 386 (N.D.1986); *Kraft v. Kraft,* 366 N.W.2d 450, 453 (N.D.1985). An abuse of discretion implies an unreasonable, arbitrary or

unconscionable attitude on the part of the trial court. *R & D Amusement, supra,* at 386. Similarly, the trial court abuses its discretion if it misinterprets or misapplies the law. *Bard v. Bard,* 380 N.W.2d 342, 345 (N.D.1986); *Heller v. Heller,* 367 N.W.2d 179, 184 (N.D.1985).

We have reviewed the pleadings and record in this case and believe that Fenske, albeit inartfully, raised an issue as to the damages Dakota is entitled to in its claim for conversion. Similarly, we believe that the trial court's interpretation of § 41-09-28(4), N.D.C.C., requiring an elevator to be held absolutely liable for checks issued to a farmer that have omitted the names of secured parties from those checks, is in error and that Fenske should have been permitted to introduce evidence in mitigation of its damages to the jury. Accordingly, we find that the district court abused its discretion in excluding Fenske's evidence relating to the commingling of the corn delivered to its elevator in Hankinson as this evidence was relevant to the issue of damages.

The addition of this evidence (the commingling of Dakota's secured corn with unsecured corn) creates a factual issue as to the extent of Dakota's actual secured interest in the corn delivered by Brakke to the Fenske elevator in Hankinson. This factual dispute, i.e., whether Dakota's secured interest was in all or only a percentage of the corn sold by Fenske on Brakke's behalf, is relevant to the issue of damages and should have been permitted to go to the jury for a determination of the extent Dakota's interest in the corn, thereby limiting the recovery by Dakota to the value of its actual interest. Therefore, we reverse the directed verdict and remand the matter limited to the issue of damages.

On remand, the only issue for determination is the extent of Dakota's secured interest in the 60,000 bushels of corn Brakke hauled to the Fenske elevator in Hankinson. Once the extent of Dakota's interest in the corn is established, Dakota's recov-

mass, they rank equally according to the ratio that the cost of the goods to which each inter-

est originally attached bears to the cost of the total product or mass."

ery should be calculated in accordance with the total amount Fenske has paid out for the corn, taking into account check number 7175 which named Dakota as payee and checks numbered 7376 and 7405 in which Dakota was not named as payee, as well as the value of the balance of the corn that remained in Fenske's possession, plus interest from the date of conversion.

Reversed and remanded for further proceedings not inconsistent with this opinion.

ERICKSTAD, C.J., and MESCHKE, J., concur.

VANDE WALLE and LEVINE, JJ., concur in the result.