STATE of North Dakota, Plaintiff
and Appellee,

v.

Ronald Raymond ERDMAN,
Defendant and Appellant.

Cr. No. 870126.

Supreme Court of North Dakota.

April 18, 1988.

James F. Lester, Fargo, for defendant and appellant; submitted on briefs.

John T. Goff, Asst. State's Atty., Fargo, for plaintiff and appellee; submitted on briefs.

ERICKSTAD, Chief Justice.

Ronald Raymond Erdman appeals from a Cass County judgment of conviction for fleeing or attempting to elude a police officer and criminal mischief in violation of sections 39–10–71 and 12.1–21–05, N.D.C.C. We reverse Erdman's conviction for fleeing a police officer but affirm his conviction for criminal mischief.

During the last week of July 1986 Officer Bud Warren of the Cass County Sheriff's Office was contacted by the Clay County[1] Sheriff's Office regarding the

---

1. Clay County is a Minnesota county which lies directly across the Red River from Cass County, North Dakota.

whereabouts of Erdman. The Sheriff of Clay County held a warrant for Erdman's arrest and suspected that Erdman was living in Cass County. On August 5, 1986, Officer Warren found the vehicle Erdman was believed to be driving, in a trailer court known as "Selkirk Settlement." Officer Warren and two other officers watched the vehicle from a distance from 6:30 a.m. until some time after 8:00 a.m. Shortly thereafter a "heavyset subject," later determined to be Erdman, came out of trailer No. 8 and drove away from the trailer court.

Officer Warren of Cass County and Officer Nordick of Clay County pursued the vehicle in a "high speed" chase which lasted for fourteen miles, including several changes of direction and a one-mile diversion through a soybean field.[2] Officer Dean Fercho of the Cass County Sheriff's Office responded to Officer Warren's radio request for assistance and joined in the chase. Officers Warren, Nordick, and Fercho were driving unmarked law enforcement vehicles; however, Officer Warren used a siren, red lights located in the grill of his vehicle, and a movable flashing light which he placed on top of his vehicle during the chase. Officers Nordick and Fercho also used movable flashing lights on the top of their unmarked vehicles during the chase. Officers Warren and Nordick were not in police uniform, nor were they displaying an official badge. It is not clear from the testimony what Officer Fercho wore, but the evidence suggests he was in civilian clothes.[3]

The chase ended without personal injury at a grain handling facility south of Fargo, North Dakota. The testimony of Erdman conflicts substantially with the testimony of Officer Bud Warren and Officer Dean Fercho relevant to the events during the arrest. Erdman contends Officer Warren yelled obscenities *and* threatened to kill

him; Officer Warren admits yelling obscenities at Erdman but denies threatening his life. Officer Fercho remembers that Officer Warren yelled obscenities but does not recall any specific death threats.

Erdman contends: (1) there was insufficient evidence to convict him of fleeing or attempting to elude a police officer pursuant to section 39–10–71, N.D.C.C.; (2) there was insufficient evidence to convict him of criminal mischief pursuant to section 12.1–21–05, N.D.C.C.; and (3) prosecution should be barred because Officer Warren's conduct during the arrest "violates that fundamental fairness, shocking to the universal sense of justice, mandated by the due process clause of the Fifth Amendment." Erdman also raises three evidentiary issues, each of them premised on the assertion that the trial court abused its discretion in: (1) allowing the State to illustrate the route of the chase with an overhead projector after details of the chase were previously admitted by way of testimonial evidence; (2) allowing two photographs of the damaged soybean field into evidence; and (3) allowing the testimony of the individual who farmed the damaged soybean field.

We believe Erdman's first contention is meritorious and we therefore reverse his conviction for fleeing or attempting to elude a police officer. The 1985 version of section 39–10–71, N.D.C.C., provided:

"*39–10–71. Fleeing or attempting to elude a police officer.* Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle, when given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class A misdemeanor. The signal given by the police officer may be by hand, voice, emergency light, or siren. *The officer*

---

2. The soybean field was one-half mile long. Erdman drove to one end of the field, gradually turned back towards the direction he entered the field to form a "big horseshoe" path through the soybean field.

3. Officer Fercho was "working on some civil papers" when he heard Officer Warren's radio request for assistance. Officer Nordick testified that law enforcement officers generally wear civilian clothing when serving process. Moreover, Officer Fercho was driving an unmarked vehicle.

*giving such signal shall be in uniform, prominently displaying his badge of office, and his vehicle shall be appropriately marked showing it to be an official police vehicle.*" [Emphasis added.] The 1985 version of section 39–10–71 required the officer to be in uniform and displaying a badge, whether or not the arrest was attempted while the officer was in a vehicle or afoot. The 1987 legislature amended section 39–10–71 and created a distinction between an officer who attempts an arrest on foot and an officer who attempts an arrest from a vehicle. The amended and current version of section 39–10–71, N.D.C.C., reads:

"*39–10–71. Fleeing or attempting to elude a peace officer.* Any driver of a motor vehicle who willfully fails or refuses to bring the vehicle to a stop, or who otherwise flees or attempts to elude, in any manner, a pursuing police vehicle or peace officer, when given a visual or audible signal to bring the vehicle to a stop, is guilty of a class A misdemeanor. A signal complies with this section if the signal is perceptible to the driver and:

1. *If given from a vehicle,* the signal is given by hand, voice, emergency light, or siren, and the stopping vehicle is appropriately marked showing it to be an official police vehicle; or

2. If not given from a vehicle, the signal is given by hand, voice, emergency light, or siren, and the officer is in uniform and prominently displays the officer's badge of office." [Emphasis added.]

The 1985 version of section 39–10–71 was in effect during Erdman's arrest and judgment of conviction. The evidence is undisputed that Officers Warren and Nordick were not wearing police uniforms and that the vehicles were "unmarked" during their pursuit of Erdman. Erdman's conviction for violation of this section is therefore reversed.

The State contends section 39–10–71, N.D.C.C., must be interpreted "with a sense of reasonableness and an examination of legislative intent." The State supports its "reasonableness" standard of interpreting section 39–10–71, N.D.C.C., with the following hypothetical question: "What if the police officer in civilian clothing drove a patrol car with permanent overhead lights and markings on the front doors. Shouldn't that officer be justified in expecting a subject vehicle to respond accordingly when signaled to stop? I think so." Whether or not an officer in such a situation should reasonably expect the driver to stop is arguable. Interpretation of this section, however, is not controlled by an officer's reasonable expectations.[4] Furthermore, we think it improper to attempt to discern legislative intent from anything other than the language of the statute when the language specifically requires the officer to wear a uniform and display a badge when attempting to signal a stop. Discerning legislative intent in this case is precluded by section 1–02–05, N.D.C.C., which reads: "[w]hen the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

Erdman also contends the evidence was insufficient as a matter of law as to his conviction for criminal mischief. He contends there was no evidence that he intentionally damaged the bean field. We disagree.

On appeal challenging the sufficiency of the evidence, Erdman must show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt. *State v. Lawenstein,* 346 N.W.2d 292, 293 (N.D.1984); *State v. Sadler,* 305 N.W.2d 913, 915 (N.D. 1981). Moreover, we do not substitute our judgment for that of the jury. *State v. Tininenko,* 371 N.W.2d 762, 765 (N.D. 1985); *State v. Walden,* 336 N.W.2d 629, 634 (N.D.1983).

Although Erdman contends he believed he was being chased by individuals who intended to harm him, we believe there was

---

**4.** The Fiftieth Legislative Assembly's amendment of § 39–10–71, *ante* at pg. 3, appears to follow the State's apparent distinction between an officer attempting to make an arrest or stop while driving a vehicle and an officer attempting to make an arrest or stop while on foot.

sufficient evidence to prove Erdman knew he was being pursued by police officers, but refused to stop his vehicle nevertheless.[5] For example, Officer Nordick testified that his vehicle met Erdman's on the highway, that both vehicles nearly stopped, and that he and Erdman looked directly at each other. Erdman admits he knows Officer Nordick but states he did not recognize him during the chase. Officers Warren and Fercho also testified that their flashing red lights were within Erdman's view several times before he drove into the soybean field.

■ Erdman next contends the State should have been barred from prosecuting him because Officer Warren's conduct lacks "fundamental fairness ... mandated by the due process clause of the Fifth Amendment." In support of his contention, Erdman relies on *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), and *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

We do not see a convincing analogy between Officer Warren's alleged death threat[6] to Erdman and the legal principles propounded in the cases Erdman cites to us. We need not express an opinion about the propriety of Officer Warren's alleged conduct in ruling that Officer Warren's alleged conduct does not require a reversal of Erdman's conviction for criminal mischief.

In *United States v. Russell, supra,* the defendant was convicted of unlawfully manufacturing and selling methamphetamine ("speed"). An undercover law enforcement agent infiltrated the defendant's drug manufacturing business and sold the defendant an ingredient needed to produce methamphetamine. The court ruled that the agent's sale of an ingredient to the defendant did not bar conviction in light of the evidence that the defendant manufac-

tured drugs before and after the agent's involvement. *Russell*, 411 U.S. at 431, 93 S.Ct. at 1642.

Dismissing defendant's argument that the government's conduct barred prosecution, the *Russell* Court stated:

"While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, cf. *Rochin v. California*, 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183] (1952), the instant case is distinctly not of that breed. [The agent's] contribution of propanone to the criminal enterprise already in process was scarcely objectionable. The chemical is by itself a harmless substance and its possession is legal.... The law enforcement conduct here stops far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment. *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 [80 S.Ct. 297, 304, 4 L.Ed.2d 268] (1960)." *Russell, supra,* 411 U.S. at 431–32, 93 S.Ct. at 1642–43.

*Rochin v. California, supra,* involved the conduct of state law enforcement officials who forcibly obtained two morphine capsules from the defendant. *Rochin*, 342 U.S. at 166, 72 S.Ct. at 206. The law enforcement officers illegally entered the defendant's home and attempted to remove the morphine capsules from his mouth. When the defendant successfully swallowed the capsules, the officers escorted the defendant to a physician who, at the behest of officers, forced an emetic solution through a tube into Rochin's stomach against his will. Rochin regurgitated the capsules and they were subsequently used as evidence to convict him. *Id.*

The *Rochin* court was:

---

5. Evidence tending to prove Erdman knew the identity and intent of his pursuers is not enough to convict him of fleeing a police officer when the 1985 version of § 39–10–71, N.D.C.C., mandates that the officer be in uniform and prominently display a badge.

6. Erdman alleges Officer Warren made the following statement during the arrest: "Don't fuck with me again motherfucker. Take a good look at me. If you ever fuck with me again—you're dead."

"[C]ompelled to conclude that the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation." *Id.* at 172, 72 S.Ct. at 209–10.

Officer Warren's alleged death threat in the instant suit came after the chase and is a far cry from the conduct in *Rochin.* There is no suggestion that Erdman was coerced into providing incriminating evidence by physical or verbal abuse.

Finally, Erdman contends the trial court abused its discretion on three evidentiary rulings. We believe the trial court properly exercised its discretion on all three rulings. Erdman first objected to the State's use of an overhead projector to illustrate the route of the fourteen-mile chase. Erdman contends use of the projector was unnecessarily repetitive and irrelevant. Erdman's second evidentiary objection is that the trial court improperly accepted two photographs of the soybean field in which the chase proceeded. Erdman contends the photographs were irrelevant. Erdman's third evidentiary contention is that the trial court improperly permitted the testimony of the person who farmed the damaged soybean field. Erdman contends the farmer's testimony was irrelevant, repetitive, and "obviously prejudicial error pursuant to N.D.R.CRIM.P. 52."

The thrust of Erdman's contentions is that the evidentiary items were either irrelevant or prejudicially repetitive in violation of Rules 401 and 403 of the North Dakota Rules of Evidence.

Rules 401 and 403, N.D.R.Ev., provide:

## "RULE 401. DEFINITION OF 'RELEVANT EVIDENCE'

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

## "RULE 403. EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR WASTE OF TIME

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The trial court is given broad discretion in determining the relevancy of evidence proffered pursuant to Rule 401, N.D.R.Ev. *Dakota Bank and Trust Co. of Fargo v. Brakke,* 404 N.W.2d 438, 444 (N.D.1987); *Shark v. Thompson,* 373 N.W.2d 859, 865 (N.D.1985). Evidence is relevant if it tends to prove or disprove a fact of consequence. *Shark, supra* at 865. Rule 403 also vests wide discretion in the trial court to control the introduction of evidence. *See* Explanatory Note, Rule 403, N.D.R.Ev. *See also, State v. Ferguson,* 391 N.W.2d 172, 178 (N.D.1986) (VandeWalle, J., concurring); *Williams County Social Services Board v. Falcon,* 367 N.W.2d 170, 177 (N.D.1985).

Reviewing these evidentiary contentions separately, we are not convinced the trial court abused its discretion. Including the soybean field diversion, the chase lasted for approximately fourteen miles and changed directions several times. An overhead projector illustrating the route of the chase may have been helpful to the jury in determining whether Erdman willfully drove through the bean field.

Photographs of the soybean field and testimony of the farmer provided evidence relative to the property damage sustained by the farmer. Damage to tangible personal property is an element of criminal

mischief under section 12.1–21–05(1)(b).[7] Thus, both the photographs and the farmer's testimony are probative of whether or not Erdman damaged tangible property of another.

For the reasons stated herein, Erdman's conviction for fleeing or attempting to elude a police officer is reversed; his conviction of criminal mischief is affirmed. This case is remanded with instructions to the trial court to modify the judgment consistent with this opinion.

GIERKE, MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, Justice, concurring in result.

I believe one of the primary purposes of the provision in Section 39–10–71, N.D.C.C., requiring the arresting officer to "be in uniform, prominently displaying his badge of office, and his vehicle ... appropriately marked showing it to be an official police vehicle" is to alert the person pursued that it is a police officer who is in pursuit and not, for example, a highway robber. If that is a primary purpose of the provision, then indeed it is inconsistent to conclude, on the one hand, that Erdman cannot be convicted of fleeing or attempting to elude a police officer but, on the other hand, to conclude that Erdman is guilty of criminal mischief because there is sufficient evidence to prove Erdman knew he was being pursued by police officers, but nevertheless refused to stop his vehicle and drove into a beanfield to elude them. However, I assume that the majority opinion is construing the language in Section 39–10–71 as mandatory rather than directory and, furthermore, is holding that as a matter of public policy the requirements therein concerning identification of police officers and their vehicles are to be adhered to before a violation of the statute will be upheld. Although it may be questioned whether or not the Legislature intended such a result,

it is a permissible legislative policy and I therefore concur in the result.

GIERKE, J., concurs.

---

7. Section 12.1–21–05(1) reads:
   "*12.1–21–05.  Criminal mischief.*
   1.  A person is guilty of an offense if he:
   a.  Willfully tampers with tangible property of another so as to endanger person or property; or
   b.  Willfully damages tangible property of another."