# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 175

State of North Dakota,                                             Plaintiff and Appellee

v.

George Robert Lyons,                                        Defendant and Appellant

No. 20180270

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable John A. Thelen, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Britta K. Demello Rice (argued), Bismarck, ND, and Jeremy A. Ensrud (appeared), Minot, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**VandeWalle, Chief Justice.**

[¶1]    George Lyons appealed from a judgment entered after a jury found him guilty of gross sexual imposition.  Lyons argues there was insufficient evidence to support the conviction and the district court committed obvious error by not declaring a mistrial after the jury heard prohibited testimony.  We affirm.


I

[¶2]    Lyons and the complainant's mother began a dating relationship, and they lived together with the complainant and her brother in Arvilla in 2009 when the complainant was thirteen years old and in Grand Forks in 2010 when she was fourteen years old.  According to the complainant, a pilot light in their Arvilla residence went out one night and Lyons carried her into a bedroom he shared with the complainant's mother.  The complainant testified that she awoke in the morning in that bedroom after her mother had left for work and Lyons pulled her shirt up over her face, put a pillow over her head, and took pictures of her breasts.  The complainant testified that when Lyons left, she went to a neighbor's house and told him about the incident and the neighbor informed the complainant's mother.

[¶3]    According to the complainant, when they lived in Grand Forks in 2010 Lyons used sleeping pills to sedate her in her bedroom while he cleaned wax buildup in her ears.  The complainant testified that during that process, Lyons touched her vagina and breasts, inserted his fingers and penis in her vagina, and inserted his penis in her mouth.  According to the complainant, Lyons also gave her sleeping pills at other times and thereafter sexually assaulted her.  The complainant testified she told her mother about the assaults, but her mother did not think the assaults were possible.  The complainant's mother testified that she did not want to believe the assaults were occurring and that Lyons told her the complainant was dreaming.

[¶4]   In 2009 and early 2010, social services investigated a report of Lyons' conduct involving the complainant.  During the investigation, the complainant stated she believed there had been sexual contact but was not certain.  Lyons denied any inappropriate touching or sexual contact with the complainant, and the investigation did not result in criminal charges at that time.  Lyons subsequently ended his relationship with the complainant's mother.

[¶5]   In 2016, the investigation against Lyons was reopened after other similar claims of inappropriate touching were made against him by a complainant in Minnesota.  After further investigation, the State charged Lyons with four counts of gross sexual imposition.  Count I alleged Lyons engaged in a sexual act with the complainant in Arvilla in March 2009 by touching her intimate parts with his hands.  Counts II through IV alleged Lyons engaged in sexual acts with the complainant in Grand Forks in January 2010.  Count II alleged the sexual act consisted of contact between Lyons' fingers and the complainant's vulva, count III alleged the sexual act consisted of contact between Lyons' penis and the complainant's vulva, and count IV alleged the sexual act consisted of contact between Lyons' penis and the complainant's mouth.

[¶6]   The district court denied the State's motion under N.D.R.Ev. 404(b) to allow the jury to hear testimony from the complainant in the Minnesota case to the effect that Lyons had sexually abused her using sleeping pills in a manner similar to the alleged acts in this case.  Before trial, the State dismissed count I involving the allegation that Lyons engaged in a sexual act with the complainant in Arvilla in March 2009.  A jury found Lyons guilty of count II for a sexual act with the complainant in Grand Forks in January 2010 involving the allegation of sexual contact between Lyons' fingers and the complainant's vulva and found him not guilty on the two other counts.

2

[¶7]   Lyons argues the district court erred in denying his motion for judgment of acquittal.  He claims there was insufficient evidence to support his conviction for gross sexual imposition under N.D.C.C. § 12.1-20-03(1)(d).

[¶8]   Section 12.1-20-03(1)(d), N.D.C.C., provides that a person who engages in a sexual act with another is guilty of an offense if the victim is less than fifteen years old.  A "sexual act" is defined in N.D.C.C. § 12.1-20-02(4) as:

> "Sexual act" means sexual contact between human beings consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any other portion of the human body and the penis, anus, or vulva; or the use of an object which comes in contact with the victim's anus, vulva, or penis.  For the purposes of this subsection, sexual contact between the penis and the vulva, the penis and the anus, any other portion of the human body and the anus or vulva, or an object and the anus, vulva, or penis of the victim, occurs upon penetration, however slight.  Emission is not required.

[¶9]   In *State v. Igou*, 2005 ND 16, ¶ 5, 691 N.W.2d 213 (citations omitted), we described our standard of review of a defendant's claim that there was insufficient evidence to support a conviction:

> A defendant bears the burden of showing the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt.  On appeal, this Court merely reviews the record to determine if there is competent evidence that allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction.  A conviction rests upon insufficient evidence only when no rational factfinder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor.

We have also recognized that the uncorroborated testimony of a sexual assault victim is sufficient to support a conviction.  *State v. Schill*, 406 N.W.2d 660, 662 (N.D. 1987).

[¶10]   The complainant's testimony provides competent evidence to support a finding that Lyons engaged in a sexual act with her in Grand Forks in 2010 when she was less

than fifteen years old. There was some corroborating evidence that Lyons was responsible for cleaning the complainant's ears and used sleep medication to assist with the cleanings. A school friend of the complainant's in Grand Forks also testified that the complainant told her Lyons had been giving the complainant pills at night and he thereafter "inserted his hands or penis inside her vagina, touched her boobs, and stuck his penis inside of her mouth." The complainant's friend testified the complainant was "[v]ery distraught" and was "confused" because her mother did not believe her. We conclude there was evidence, viewed in the light most favorable to the verdict, for the jury to find Lyons committed gross sexual imposition under N.D.C.C. § 12.1-20-03(1)(d) with a victim less than fifteen years old.

III

[¶11] Lyons argues the district court committed obvious error in not declaring a mistrial after prohibited testimony was repeatedly given.

[¶12] At trial, the complainant's neighbor in Arvilla testified his daughter and the complainant rode the bus to school together and the complainant often came to his house in the morning to get on the bus with his daughter. According to the neighbor, the complainant came to his house one morning a little earlier than normal and was crying. He testified he asked her what had happened:

> Q    [PROSECUTOR] Okay. And did [the complainant] tell you that George did something inappropriate to her?
> A    Yes.
> Q    And what do you remember as far as what happened in that bed?
> A    She fell back asleep and then she told me the next thing she remembered was he was inside her.
> [Defense Counsel]: Objection, Your Honor.
> THE COURT: Counsel approach.
> (Discussion at the bench between the Court and counsel.)
> [PROSECUTOR]: I told him not to testify to that.
> THE COURT: I'm going to have the answer stricken from the record and if you need to speak with him.
> . . . .

4

[PROSECUTOR]: Well, he's already said it so we can move on from there. We can have him strike. I don't think we need to take a break because that makes it seem like a bigger deal than it is.

THE COURT: And that leaves [defense counsel].

[DEFENSE COUNSEL]: At the very least it needs to be stricken and the jury needs to be –

[PROSECUTOR]: Well, I agree.

[DEFENSE COUNSEL]: – severely admonished that they're not allowed to consider it.

THE COURT: Should we do it now?

[PROSECUTOR]: Yeah, I think we should do it now.

[DEFENSE COUNSEL]: Yeah, now.

[PROSECUTOR]: And then we'll do (inaudible).

THE COURT: Do you want to have a quick private conversation with him?

[PROSECUTOR]: No, we'll move on. Yep.

THE COURT: All right.

(In open court.)

THE COURT: All right. There's been an objection to the answer to the last question and the Court is going to sustain that objection and I'm going to strike that answer from the record. And I need to strongly admonish the jury to disregard that information provided by this witness concerning the last question. When an objection is sustained and the information is stricken from the record, it is not to be considered in any way by this jury in making a final determination in this case.

[Defense Counsel], are you satisfied with the admonition?

[DEFENSE COUNSEL]: I am.

[¶13] The neighbor then testified he telephoned the complainant's mother, and the following colloquy occurred:

Q    [PROSECUTOR] And what happened after that?

A    Well, I — my daughter was too young to really understand what was going on, so I got her on the bus and sent her to school. And we called — I told [the complainant] to stay home and we called [the complainant's mother]. And I told her she needed to come home right away and I told her what happened. And she did come home right away. And then when she got home, she was — she told me that George sometimes does this in his sleep.

5

[Defense Counsel]: Objection, Your Honor, nonresponsive. Irrelevant.

[¶14]   After the jury was excused, the following colloquy occurred:

[DEFENSE COUNSEL]: Your Honor, I think everyone was somewhat surprised, for lack of a better word, in regard to [the neighbor's] statement that has subsequently been stricken in regard to insertion. The jury's been admonished in that regard. Subsequent testimony from [the neighbor] indicated that he had brought it to the attention of the young lady's mother that something inappropriate had happened. We go through that and all of a sudden out of nowhere we get the answer, well, he sometimes does this in his sleep. Does what in his sleep?

Based on the Court's earlier ruling, we've got an absolute mess on our hands right now and the jury is left in a position of — I think the Court can see where I'm coming from. The insertion testimony was stricken. Now we've got testimony in regard to apparently that he sometimes does this in his sleep. Absent some additional explanation, I would ask that that testimony be stricken as well.

. . . .

THE COURT: Okay. So my understanding, when I heard the answer, I thought it was not responsive to the question, first of all.

. . . .

THE COURT: Before we do that, do you want, when [the jury] come[s] back then my plan would be just to tell the jury the answer to the last question was nonresponsive, it'll be stricken from the record and then you can continue on.

[PROSECUTOR]: Okay.

THE COURT: Are you satisfied with that?

[DEFENSE COUNSEL]: That's fine, Judge.

THE COURT: Okay.

. . .

(Jury enters the courtroom.)

THE COURT: Be seated. We'll have the record reflect that the jury returned to the courtroom after a very short recess.

And I will advise the jury that I have ruled on the objection that was being made at the time that, just prior to you stepping out of the courtroom and the ruling was that the response to the question was nonresponsive. And so that answer, the last answer of the witness will be stricken from the record as well. You are to disregard the statement, the last statement or answer provided by this witness and we will continue on then with additional, additional direct.

[¶15] Lyons argues the district court committed obvious error in not declaring a mistrial on its own motion. We exercise our power to notice obvious error cautiously and only in exceptional circumstances where an accused has suffered serious injustice. *State v. Olander*, 1998 ND 50, ¶ 12, 575 N.W.2d 658. Our standard for reviewing claims of obvious error requires (1) error, (2) that is plain, and (3) affects substantial rights. *Id.* at ¶ 14. The error must be a clear deviation from an applicable legal rule under current law and must affect substantial rights, that is it must have been prejudicial, or affected the outcome of the proceeding. *Id.* at ¶¶ 14-15. An appellate court should not correct an error unless there is a clear deviation from an applicable legal standard under current law. *Id.* at ¶ 14. A defendant has the burden to show the error was prejudicial. *Id.* at ¶ 15. Once a defendant establishes a forfeited plain error does affect substantial rights, an appellate court has discretion to correct the error and should correct it if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at ¶ 16.

[¶16] We have recognized a mistrial is an extreme remedy appropriate only when there is a fundamental defect or occurrence in the trial proceedings making it evident that further proceedings would produce a manifest injustice. *State v. Carlson*, 2016 ND 130, ¶ 11, 881 N.W.2d 649. A curative instruction is generally sufficient to remove improper prejudice caused by improper evidence or testimony, and courts generally presume a jury follows curative instructions. *Id.*

[¶17] At the request of defense counsel, the district court struck the neighbor's testimony that Lyons "was inside" the complainant and gave a curative instruction for the jury to disregard that testimony. The record also reflects that at the request of defense counsel the court struck the neighbor's later nonresponsive testimony that "George sometimes does this in his sleep" and gave a curative instruction. Lyons did not request a mistrial, but indicated he was satisfied with the court's admonishment. The court did not deviate from established precedent in striking the responses and giving curative instructions. We conclude the court's failure to grant a mistrial on its own motion does not constitute a clear deviation from applicable law. We therefore

7

reject Lyons' claim that the court committed obvious error in not granting a mistrial on its own motion.

IV

[¶18]  We affirm the judgment.

[¶19]  Gerald W. VandeWalle, C.J.
Jerod E. Tufte
Daniel J. Crothers
Lisa Fair McEvers
Benny A. Graff, S.J.

[¶20]  The Honorable Benny Graff, S.J., sitting in place of Jensen, J., disqualified.