FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
DECEMBER 17, 2020
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 315

State of North Dakota,                                  Plaintiff and Appellee

v.

John Immanuel Hirschkorn,                          Defendant and Appellant

## No. 20190404

Appeal from the District Court of McLean County, South Central Judicial District, the Honorable David E. Reich, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Ladd R. Erickson, State's Attorney, Washburn, N.D., for plaintiff and appellee; submitted on brief.

Jennifer M. Gooss, Beulah, N.D., for defendant and appellant.

# State v. Hirschkorn
## No. 20190404

**Tufte, Justice.**

[¶1]   John Hirschkorn appeals from a criminal judgment entered after a jury found him guilty of aggravated assault and driving under the influence of alcohol. We conclude that the district court did not abuse its discretion in admitting and excluding certain evidence at trial and that sufficient evidence supports the guilty verdicts. We affirm.

I

[¶2]   The charges in this case arise out of an altercation in a McLean County bar that was captured on video. On October 10, 2018, Hirschkorn was involved in a bar fight with another individual, resulting in Hirschkorn striking that individual in the face with a beer bottle and causing a serious cut to the individual's face. Hirschkorn also sustained several injuries, including a blow to his head. After the fight concluded, Hirschkorn left the bar and drove away from the scene. Law enforcement officers arrived at the bar, and the individual was taken to the hospital. Officers subsequently located Hirschkorn driving his vehicle. He was stopped and ultimately arrested for driving under the influence. Because Hirschkorn was taken to the hospital to be medically cleared before testing, it was more than two hours after he had last driven that an Intoxilyzer test established his blood alcohol concentration to be 0.139 percent, over the legal limit.

[¶3]   The State charged Hirschkorn with aggravated assault and driving while under the influence of alcohol. In June 2019, the district court held a two-day jury trial. Before jury selection, Hirschkorn made a motion in limine requesting the court to exclude a video from the bar showing at least a portion of the fight. The court subsequently received the video into evidence at trial over his objection. The court also allowed limited testimony at trial from Dr. Rodney Swenson, a neuropsychologist called as an expert witness by Hirschkorn to discuss symptoms of traumatic brain injury, to show Hirschkorn had sustained a brain injury caused by the other individual in the altercation, and to support the reasonableness of his claim of self-defense.

[¶4]   After the State rested, and at the close of all evidence, Hirschkorn moved for a judgment of acquittal on both charges. The court denied his motion, finding sufficient evidence existed for the case to go to the jury. The jury found him guilty on both counts. The court held a sentencing hearing in November 2019, and a criminal judgment was entered.

## II

[¶5]   Hirschkorn argues the district court erred in admitting and excluding certain evidence during trial. He specifically claims the court should have excluded the exhibit including bar videos and the court should not have limited the neuropsychologist's expert testimony.

[¶6]   We review the district court's evidentiary rulings for an abuse of discretion. *State v. Poulor*, 2019 ND 215, ¶ 14, 932 N.W.2d 534. A court's decision to exclude evidence on the basis that it lacks adequate foundation lies within its sound discretion and will not be reversed on appeal absent an abuse of discretion that affected substantial rights. *See, e.g.*, *Swiontek v. Ryder Truck Rental, Inc.*, 432 N.W.2d 893, 896 (N.D. 1988). A court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably or if it misinterprets or misapplies the law. *Poulor*, at ¶ 14.

[¶7]   If the district court erred in admitting evidence, this Court must then decide whether the evidence was so prejudicial that "a defendant's substantial rights were affected and a different decision would have resulted without the error." *City of Fargo v. Erickson*, 1999 ND 145, ¶ 13, 598 N.W.2d 787. Under N.D.R.Crim.P. 52(a), an erroneous evidentiary ruling will be disregarded as harmless error when it does not affect the defendant's substantial rights. *Erickson*, at ¶ 13.  This Court further said:

> The note to N.D.R.Crim.P. 52 explains: "To determine whether error affecting substantial rights of the defendant has been committed, the entire record must be considered and the probable effect of the error determined in the light of all the evidence." *See also* 28 James W. Moore et al, *Moore's Federal Practice Federal Rules of Criminal Procedure* § 652.03[1] (2d ed. 1999) (An error should not be considered in isolation when deciding whether it has affected a defendant's substantial rights, but should be considered

2

in the context of the entire record.); 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 103.41[5][a] (2d ed. 1999) (Appellate courts frequently conclude an error is prejudicial if the "erroneously admitted evidence is the only or primary evidence in support of or in opposition to a claim or defense").

*Erickson*, at ¶ 13.

A

[¶8]   Hirschkorn argues the district court abused its discretion by admitting the State's Exhibit 3, including bar videos of the incident, which should have been excluded. He contends the evidence lacked proper authentication and foundation and was unfairly prejudicial.

[¶9]   To authenticate evidence under N.D.R.Ev. 901(a), the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. Rule 901(b)(1) and (4), N.D.R.Ev., provides examples of authentication including testimony of a witness with knowledge "that an item is what it is claimed to be," and "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *See also State v. Thompson*, 2010 ND 10, ¶¶ 21-22, 777 N.W.2d 617. "[T]he proponent of offered evidence need not rule out all possibilities inconsistent with authenticity or conclusively prove that evidence is what it purports to be; rather, the proponent must provide proof sufficient for a reasonable juror to find the evidence is what it purports to be." *Thompson,* at ¶ 21 (citations omitted).

[¶10] For example, "a properly authenticated video tape recording of the scene of the crime constitutes competent evidence and is admissible over the defendant's objections that the tape is inflammatory, prejudicial, or cumulative." 29A Am. Jur. 2d *Evidence* § 976 (footnotes omitted).

> Videotapes are admissible as evidence only when a proper foundation has been established. Motion picture films and videotapes may be authenticated by testimony that the film or tape accurately depicts the events shown in it. The party who offers a videotape in evidence must show that it is an accurate, faithful

3

representation of the place, person, or subject it purports to portray.

This foundation must be laid by someone having personal knowledge of the filmed subject that the film is an accurate portrayal of what it purports to show. Thus, the testimony of a person who was present at the time a film was made that it accurately depicts what it purports to show is a legally sufficient foundation for its admission in evidence. While testimony from a videographer that he took the video, that it correctly reflects what he saw, and that it has not been altered or edited is normally sufficient to authenticate a videotape, there is no requirement that the videotape be authenticated by a photographer so long as the person authenticating the videotape is familiar with the scene depicted. Whether a videotape is a fair and accurate representation of the scene sought to be depicted addresses itself to the discretion of the trial judge which will not be controlled unless abused.

*Id.* § 977 (footnotes omitted).

[¶11] Hirschkorn contends the second video included within State's Exhibit 3 should have been excluded because of lack of authentication and foundation. He asserts he objected to the admission because the bar owner did not provide all of the videos to law enforcement. He asserts the bar owner testified that he provided video of the incident near the bathroom but that his bar manager had provided the video with the depiction of the beer bottle. Because the bar owner did not have "independent knowledge" of the video his manager provided to the officer, Hirschkorn argues there was not proper authentication and foundation.

[¶12] Hirschkorn further argues the video should have been excluded because it was unfairly prejudicial under N.D.R.Ev. 403. He asserts there are thirty-four seconds missing from the videos according to the time stamps. He contends the State's failure to preserve potentially useful evidence can be a violation of due process if done in bad faith. *See State v. Steffes*, 500 N.W.2d 608, 612 (N.D. 1993) (summarizing three categories of cases in which courts "have attempted to analyze an accused's right to due process when prosecutors fail[ed] to provide evidence to the defense which [was] within, or potentially within, their purview"). He asserts it is unclear here whether the State collected the full video and then intentionally destroyed or suppressed the

missing thirty-four seconds. He argues that the bar video evidence was cumulative because there were multiple witnesses who testified he hit the victim in the face with a bottle and caused a cut and that admitting the video resulted in his being denied his substantial right to due process.

[¶13] The State responds, however, that the bar owner made copies of his bar video for law enforcement and specifically identified those videos at trial and that the owner attested the videos were fair and accurate depictions of what had occurred in the bar on October 10, 2018, because the videos had not been changed, altered, or manipulated. The State maintains the court considered the alleged "gap" in the videos but admitted them anyway. The State asserts it laid proper foundation and authenticated the bar videos and it was for the jury to decide any question regarding video footage related to the crime charged.

[¶14] On our review of the record, we conclude the State provided sufficient foundational evidence to establish that the videos are a fair and accurate representation of what they purport to be and that the alleged 34-second gap was not prejudicial nor did it change the result of the trial. The bar owner testified as to the foundation for the videos. Various witnesses testified at trial about what the video purports to show, including the other individual involved in the altercation. Hirschkorn himself testified at trial and provided his own explanation of what was depicted on the video. He specifically testified that his life was threatened by the other individual and that he acted in self-defense when he hit the individual with the bottle.

[¶15] The district court did not act arbitrarily, capriciously, or unreasonably in deciding to admit the exhibit, and in the context of the other evidence presented, the videos were not unfairly prejudicial. We therefore conclude the district court did not abuse its discretion in admitting the State's Exhibit 3 containing the bar videos.

B

[¶16] Hirschkorn argues the district court abused its discretion by limiting testimony at trial of Dr. Rodney Swenson.

5

[¶17] The district court has broad discretion in deciding whether to allow expert testimony, and its decision will not be reversed on appeal absent an abuse of discretion. *Klein v. Estate of Luithle*, 2019 ND 185, ¶ 3, 930 N.W.2d 630; *see also* N.D.R.Ev. 702, 703. The probative effect and admissibility of evidence is a matter for the court's discretion, and the court may exclude relevant evidence when its probative value is substantially outweighed by danger of unfair prejudice or other evidentiary considerations. *Id.*; *see* N.D.R.Ev. 402, 403. "It is the district court's responsibility to make certain expert testimony is reliable as well as relevant." *Klein*, at ¶ 3 (quoting *Myer v. Rygg*, 2001 ND 123, ¶ 10, 630 N.W.2d 62).

[¶18] Hirschkorn contends the district court's "exclusion" of the doctor's testimony was due to his lack of disclosing the doctor's qualifications and opinions. He argues this was an error of law because he was not required to do so and the State did not serve a reciprocal discovery request. *See* N.D.R.Crim.P. 16(b)(1)(C). He further contends the court erroneously limited the doctor's testimony on the basis of a misinterpretation and misapplication of N.D.R.Crim.P. 12.2(b), because Hirschkorn was not claiming he had a mental defect and lacked capacity to form the requisite intent. While he did not dispute at trial that he knowingly caused bodily injury to the other individual, he asserts he did the act in self-defense because he reasonably feared for his safety.

[¶19] Hirschkorn asserts Dr. Swenson's testimony would have been presented to clarify that he had suffered a traumatic brain injury, that symptoms the State argued were due to his being under the influence of alcohol were consistent with such an injury, and that his actions taken in self-defense were reasonable. He contends the court's limiting Dr. Swenson's testimony greatly prejudiced him and affected his substantial right to due process. He argues that because the court prohibited Dr. Swenson from testifying about the "numerous" medical records he reviewed in reaching his opinion, the State was able to mislead the jury by arguing that he was feigning his injury.

[¶20] The State responds that the district court properly limited the testimony of an undisclosed expert. The State contends it did not contest that Hirschkorn had sustained injuries, but rather that his injuries had nothing to do with his

striking the other individual's face with a beer bottle after mutual combat was over and the individual was seated at the bar. The State asserts Hirschkorn's actions were clearly excessive under the circumstances. The State objected to the doctor's testimony as irrelevant since he was not a fact witness. The State asserts the expert's testimony was not helpful to the trier of fact, the doctor admitted he did not even know what the purpose of his testimony was, and the court did not err in limiting the testimony to the doctor's background and personal interactions with the defendant.

[¶21] Here, Dr. Swenson was permitted to testify at trial regarding the typical symptoms exhibited with a traumatic brain injury, including symptoms related to him by Hirschkorn such as headaches, dizziness, nausea, and memory loss. Dr. Swenson testified that he had reviewed the bar video of the altercation, reviewed the photographs of Hirschkorn's injuries, and had talked to Hirschhorn. Dr. Swenson was also permitted to testify that he believed to a reasonable degree of medical certainty that Hirschhorn had a traumatic brain injury and that Hirschkorn's injuries were caused by the other individual during the altercation at the bar.

[¶22] While the district court did not permit Dr. Swenson to testify about Hirschhorn's medical records, the court had also considered that Dr. Swenson was not Hirschkorn's treating physician and had not examined him. Moreover, the State did not dispute that Hirschkorn was injured in the altercation. On this record, we conclude the district court did not abuse its discretion by limiting Dr. Swenson's testimony.

III

[¶23] Hirschkorn argues insufficient evidence supports the jury's guilty verdicts for aggravated assault and driving under the influence. Our standard of review is well established:

> A defendant challenging the sufficiency of the evidence on appeal "must show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt." *State v. Jacobson*, 419 N.W.2d 899, 901 (N.D. 1988). This Court's role is "to merely review the record to determine if there is competent evidence that allowed the jury to draw an inference

7

'reasonably tending to prove guilt and fairly warranting a conviction.'" *Id.* (quoting *State v. Matuska*, 379 N.W.2d 273, 275 (N.D. 1985)). The Court does not weigh conflicting evidence or judge the credibility of witnesses. *State v. Brandner*, 551 N.W.2d 284, 286 (N.D. 1996).

*State v. Michel*, 2020 ND 101, ¶ 12, 942 N.W.2d 472 (quoting *State v. Mohammed*, 2020 ND 52, ¶ 5, 939 N.W.2d 498); *see also State v. Friesz*, 2017 ND 177, ¶ 34, 898 N.W.2d 688. "A conviction rests upon insufficient evidence only when no rational factfinder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor." *State v. Baltrusch*, 2019 ND 259, ¶ 5, 934 N.W.2d 886 (quoting *State v. Lyons*, 2019 ND 175, ¶ 9, 930 N.W.2d 156).

### A

[¶24] Under N.D.C.C. § 12.1-17-02(1)(b) and (c), to convict for aggravated assault, the State was required to prove beyond a reasonable doubt that Hirschhorn:

b. Knowingly cause[d] bodily injury or substantial bodily injury to another human being with a dangerous weapon or other weapon, the possession of which under the circumstances indicates an intent or readiness to inflict serious bodily injury; [or]

c. Cause[d] bodily injury or substantial bodily injury to another human being while attempting to inflict serious bodily injury on any human being[.]

The State was required to prove each element of the offense beyond a reasonable doubt, including that Hirschhorn was not acting in self-defense and that his conduct was not excused because he believed his conduct was necessary and appropriate. *See* N.D.C.C. § 12.1-01-03(1); N.D.C.C. § 12.1-05-08. Section 12.1-05-03, N.D.C.C., provides for when force is justified in self-defense:

A person is justified in using force upon another person to defend himself against danger of imminent unlawful bodily injury, sexual assault, or detention by such other person, except that:

1. A person is not justified in using force for the purpose of resisting arrest, execution of process, or other performance of duty by a public servant under color of law, but excessive force may be resisted.
2. A person is not justified in using force if:
   a. He intentionally provokes unlawful action by another person to cause bodily injury or death to such other person; or
   b. He has entered into a mutual combat with another person or is the initial aggressor unless he is resisting force which is clearly excessive in the circumstances. A person's use of defensive force after he withdraws from an encounter and indicates to the other person that he has done so is justified if the latter nevertheless continues or menaces unlawful action.

[¶25] Hirschkorn argues there was insufficient evidence to establish that he possessed the beer bottle with an intent or readiness to inflict serious bodily injury, that he was attempting to inflict serious bodily injury, or that his actions were not done in self-defense. He relies on his testimony that the beer bottle was not his and that he grabbed the bottle just as a reaction in hopes he could leave. He contends there was no attempt, intent, or readiness to inflict serious bodily injury and there was no evidence presented of a serious bodily injury. Hirschkorn asserts that he attempted to end the fight and leave multiple times but the other individual kept pursuing him. Moreover, he asserts the individual, as a co-combatant, testified he did not remember much or had no memory of the period leading up to getting hit with the bottle or of leaning into Hirschkorn as if threatening him.

[¶26] The State responds that this Court should reject Hirschkorn's argument because it mainly relies on his own version of the events. The State asserts the jury heard all the evidence at trial and rejected his version.

[¶27] In addition to the videos of the altercation at the bar, there was testimony at trial from various witnesses, including the other individual

9

involved in the altercation and from Hirschkorn himself. The jury was permitted to draw its own inferences regarding Hirschkorn's intent in using the beer bottle as a weapon and whether striking the other individual's face with it was reasonable self-defense based on Hirschkorn's injuries sustained in the bar fight. On this record, we conclude that sufficient evidence supports the jury's verdict finding him guilty of aggravated assault.

B

[¶28] Hirschkorn argues that insufficient evidence supports a guilty verdict for driving under the influence of alcohol. He contends that the evidence showed he had a couple of beers and a shot over an eight-hour period, and that the amount of alcohol testified to would not cause a person to be under the influence. He contends the deputy's initial stop and tests did not provide sufficient evidence he was under the influence. Hirschkorn asserts the deputy did not observe any clues in his traffic stop that indicated Hirschkorn was under the influence, and he further asserts a traumatic brain injury the other individual inflicted on him in the fight caused severe dizziness and staggering. Hirschkorn also contends the Intoxilyzer test was "invalid" due to the approved method not being followed. *See State v. Stroh*, 2011 ND 139, ¶ 9, 800 N.W.2d 276. He argues the deputy did not follow the approved method because he did not establish a twenty-minute waiting period during which he could have ascertained whether Hirschkorn had placed anything in his mouth. He points to the deputy's testimony that during the waiting period, there were four minutes when the deputy left the room and another point when Hirschkorn went to the restroom. He asserts this is also shown on the deputy's body cam footage. Hirschkorn contends, therefore, there was insufficient evidence to support a guilty verdict for driving under the influence. The State again asserts the jury heard all the evidence at trial and rejected his version, including the purported brain injury causing dizziness and staggering.

[¶29] At oral argument, Hirschkorn's counsel conceded that he waived the "scrupulous compliance" argument with regard to the Intoxilyzer test and that the issue on appeal was regarding the weight of the evidence supporting the driving under the influence conviction. Moreover, Hirschkorn did not object to admission of the exhibit containing the Intoxilyzer test results at trial.

10

Regarding the chemical test, the jury was specifically instructed that the accuracy and reliability of the test was a question of fact solely for the jury's determination and that the jury must disregard the test if the jury had reasonable doubt as to the accuracy or reliability of the chemical test or result.

[¶30] Here, the officer testified at trial that he witnessed Hirschkorn's vehicle swerving down the road. There is evidence that Hirschkorn stumbled out of his vehicle, smelled of alcohol, had slurred speech, and had a blood alcohol content of 0.139 percent. There was also testimony that Hirschkorn drank at multiple restaurants and bars before arriving at the bar at which the altercation took place. While he asserted at trial that he was not drunk, the jury was free to draw its own conclusion.

[¶31] On the basis of our review of the record, we conclude sufficient evidence supports the jury's verdict finding Hirschkorn guilty of driving under the influence of alcohol.

IV

[¶32] The judgment is affirmed.

[¶33] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte

11